# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MICAYL RODGERS, individually and on behalf of all others similarly situated,

v.

WHIRLPOOL CORPORATION

**Case No. 1:22-cv-00330**
FLSA Collective Action
FED. R. CIV. P. 23 Class Action

## PLAINTIFF'S ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, Whirlpool's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Whirlpool's organization.

3. As a result, Whirlpool's workers who were not exempt from overtime requirements under federal and state law were not paid for all hours worked or were not paid their proper overtime premium after the onset of the Kronos hack.

4. Micayl Rodgers is one such Whirlpool worker.

5. Whirlpool could have easily implemented a system for recording hours and paying wages to non-exempt employees until issues related to the hack were resolved.

6. But it didn't. Instead, Whirlpool used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. Whirlpool pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. The burden of the Kronos hack was made to fall on front-line workers—average Americans—who rely on the full and timely paymet of their wages to make ends meet.

9. Whirlpool's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the Massachusetts Minimum Fair Wage Law (MFWL), M.G.L. c. 151 *et seq.*

10. Rodgers brings this lawsuit to recover these unpaid overtime wages and other damages owed by Whirlpool to him and the non-overtime-exempt workers like him, who were the ultimate victims of not just the Kronos hack, but also Whirlpool's decision to make its front line workers bear the economic burden for the hack.

11. This action seeks to recover the unpaid wages and other damages owed by Whirlpool to all these workers, along with the penalties, interest, and other remedies provided by federal and Massachusetts law.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Whirlpool is headquartered in this District.

## PARTIES

15. **Plaintiff Micayl Rodgers** is a natural person.

16. Rodgers has been, at all relevant times, an employee of Whirlpool.

17. Rodgers has worked for Whirlpool since September 2021.

18. Rodgers's written consent is attached as Exhibit 1.

19. Rodgers represents at least two groups of similarly situated Whirlpool workers.

20. Rodgers represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former hourly and salaried employees of Whirlpool (including its subsidiaries and alter egos) who were non-exempt under the FLSA and who worked for Whirlpool in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

21. Rodgers represents a class of similarly situated workers under Massachusetts law pursuant to Federal Rule of Civil Procedure 23. This "Massachusetts Class" is defined as:

> **All current or former hourly and salaried employees of Whirlpool (including its subsidiaries and alter egos) who were not exempt from overtime pay and who worked for Whirlpool in Massachusetts at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

22. Together, throughout this Complaint, the FLSA Collective members and Massachusetts Class members are referred to as the "Similarly Situated Workers."

23. **Defendant Whirlpool Corporation ("Whirlpool")** is a foreign corporation.

24. Whirlpool maintains its headquarters and principal place of business in this District.

25. Whirlpool may be served by service upon its registered agent, **CSC-Lawyers Incorporating Service, 2900 West Rd., Ste. 500, East Lansing, MI 48823**, or by any other method allowed by law.

26. At all relevant times, Whirlpool exerted operational control over its subsidiaries and alter egos.

27. At all relevant times, Whirlpool substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

28. At all relevant times, Whirlpool had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

29. Whirlpool's subsidiaries and alter egos include Acros, Affresh Applicnce Care, Amana, Bauknecht, Brastemp, Consul, Diqua, Everydrop, Gladiator, Hotpoint, Indesit, Jennair, KitchenAid, Maytag, Swash, and Yummly.

30. Whirlpool employed and/or jointly employed, with its subsidiaries and alter egos, Williams and the Similarly Situated Workers.

31. Whirlpool and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

32. Whirlpool and its respective subsidiaries and alter egos are joint employers for purposes of Massachusetts law.

33. Throughout this Complaint, Whirlpool and its subsidiaries and alter egos are referred to jointly as "Whirlpool."

### COVERAGE UNDER THE FLSA

34. At all relevant times, Whirlpool was an employer of Rodgers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

35. At all relevant times, Whirlpool was an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

36. At all relevant times, Whirlpool has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

37. During at least the last three years, Whirlpool has had gross annual sales in excess of $500,000.

38. During at least the last three years, Whirlpool was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

39. Whirlpool employs many workers, including Rodgers, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

40. The goods and materials handled, sold, or otherwise worked on by Rodgers, and other Whirlpool employees and that have been moved in interstate commerce include, but are not limited to, kitchen supplies and equipment.

## FACTS

41. Whirlpool is a kitchen and laundry company. Whirlpool, Our Company, https://whirlpoolcorp.com/our-company/ (last accessed Apr. 5, 2022).

42. Whirlpool employs around 69,000 people. Whirlpool, Our Company, https://whirlpoolcorp.com/our-company/ (last accessed Apr. 5, 2022).

43. Many of Whirlpool's employees are non-exempt hourly and salaried workers.

44. Since at least 2021, Whirlpool has used timekeeping software and hardware operated and maintained by Kronos.

45. On or about December 11, 2021, Kronos was hacked with ransomware.

46. The Kronos interfered with its clients, including Whirlpool's, ability to use Kronos's software and hardware to track hours and pay employees.

47. Since the onset of the Kronos hack, Whirlpool has not kept accurate track of the hours that Rodgers and Similarly Situated Workers have worked.

48. Instead, Whirlpool has used various methods to estimate the number of hours Rodgers and Similarly Situated Workers work in each pay period.

49. For example, Whirlpool issued paychecks based on the workers' scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

50. This means that employees who were non-exempt and who worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

51. Even if certain overtime hours were paid, the pay rate would be less than the full overtime premium.

52. Many employees were not even paid their non-overtime wages for hours worked before 40 in a workweek.

53. Rodgers is one such employee.

54. Instead of paying Rodgers for the hours he actually worked (including overtime hours), Whirlpool simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** Rodgers's actual hours worked and regular pay rates.

55. In some instances, Rodgers was paid portions of overtime hours worked, but the overtime rate was not at the proper overtime premium of at least 1.5x the regular rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

56. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the

employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other adjustments required by law.

57. Whirlpool knows they have to pay proper overtime premiums to non-exempt hourly and salaried employees.

58. Whirlpool knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

59. Whirlpool knows it has to pay the wages it agreed to pay its employees.

60. Whirlpool knows this because, prior to the Kronos hack, it routinely paid these workers for all hours worked at the rates it agreed to pay them.

61. Whirlpool could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

62. Instead of accurately tracking hours and paying employees wages and overtime, Whirlpool decided to arbitrarily pay these employees, without regard to the wages and overtime they were owed.

63. It was feasible for Whirlpool to have its employees and managers report accurate hours so they could be paid for the work they did for the company.

64. But it chose not to do that.

65. In other words, Whirlpool pushed the effects of the Kronos hack onto the backs of their most economically vulnerable workers, making sure that it kept the money owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

66. Rodgers is one of Whirlpool's employees who had to shoulder the burden of this decision by Whirlpool.

67. Rodgers was and is a non-exempt hourly employee of Whirlpool.

68. Rodgers regularly works over 40 hours per week for Whirlpool.

69. Since the Kronos hack, Whirlpool has not paid Rodgers for his actual hours worked each week.

70. Since the hack took place, Whirlpool has not been accurately recording the hours worked by Rodgers and its other workers.

71. Even though Whirlpool has had Rodgers record and submit his hours, Whirlpool has not issued proper payment for all hours worked.

72. Even when Whirlpool has issued payment to Rodgers for any overtime, the overtime is not calculated based on Rodgers's regular rates, as required by federal and Massachusetts law.

73. Whirlpool was aware of the overtime requirements of the FLSA.

74. Whirlpool nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Rodgers.

75. Whirlpool's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

76. The full overtime wages owed to Rodgers and the Similarly Situated Workers became "unpaid" when the work for Whirlpool was done—that is, on Rodgers and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

77. At the time Whirlpool failed to pay Rodgers and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Whirlpool became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under federal law.

78. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

79. Even if Whirlpool made any untimely payment of unpaid wages due and owing to Rodgers or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

80. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

81. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Whirlpool's acts and omissions resulting in the unpaid wages in the first place.

82. Rodgers and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Whirlpool under federal and Massachusetts law.

### COLLECTIVE ACTION ALLEGATIONS

83. Rodgers incorporates all other allegations.

84. Numerous individuals were victimized by Whirlpool's patterns, practices, and policies, which are in willful violation of the FLSA.

85. Based on his experiences and tenure with Whirlpool, Rodgers is aware that Whirlpool's illegal practices were imposed on the FLSA Collective.

86. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

87. These employees are victims of Whirlpool's unlawful compensation practices and are similarly situated to Rodgers in terms of the pay provisions and employment practices at issue in this lawsuit.

88. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

89. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

90. Whirlpool's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

91. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### CLASS ACTION ALLEGATIONS

92. Rodgers incorporates all other allegations.

93. The illegal practices Whirlpool imposed on Rodgers were likewise imposed on the Massachusetts Class members.

94. Numerous other individuals who worked for Whirlpool were were not properly compensated for all hours worked, as required by Massachusetts law.

95. The Massachusetts Class is so numerous that joinder of all members of the class is impracticable.

96. Whirlpool imposed uniform practices and policies on Rodgers and the Massachusetts Class members regardless of any individualized factors.

97. Based on his experience and tenure with Whirlpool, as well as coverage of the Kronos hack, Rodgers is aware that Whirlpool's illegal practices were imposed on the Massachusetts Class members.

98. Massachusetts Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

99. Massachusetts Class members were all not paid their contractually agreed wages.

100. Whirlpool's failure to pay wages and overtime compensation in accordance with Massachusetts law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Massachusetts Class members.

101. Whirlpool's failure to pay contractually agreed wages and overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Massachusetts Class members.

102. Rodgers's experiences are therefore typical of the experiences of the Massachusetts Class members.

103. Rodgers has no interest contrary to, or in conflict with, the members of the Massachusetts Class. Like each member of the proposed class, Rodgers has an interest in obtaining the unpaid wages and other damages owed under the law.

104. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

105. Absent this action, many Massachusetts Class members likely will not obtain redress of their injuries and Whirlpool will reap the unjust benefits of violating Massachusetts law.

106. Furthermore, even if some of the Massachusetts Class members could afford individual litigation against Whirlpool, it would be unduly burdensome to the judicial system.

107. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

108. The questions of law and fact common to each of the Massachusetts Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether the Massachusetts Class members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek; and

   b. Whether Whirlpool's failure to pay overtime at the rates required by law violated the MFWL.

109. Rodgers's claims are typical of the Massachusetts Class members. Rodgers and the Massachusetts Class members have all sustained damages arising out of Whirlpool's illegal and uniform employment policies.

110. Rodgers knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

111. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

# FIRST CAUSE OF ACTION—VIOLATIONS OF THE FLSA
## AS TO RODGERS AND THE FLSA COLLECTIVE

112. Rodgers incorporates each other allegation.

113. By failing to pay Rodgers and the FLSA Collective members overtime at 1.5 times their regular rates, Whirlpool violated the FLSA. 29 U.S.C. § 207(a).

114. Whirlpool owe Rodgers and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

115. Whirlpool owe Rodgers and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

116. Whirlpool knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

117. Because Whirlpool knew, or showed reckless disregard for whether, their pay practices violated the FLSA, Whirlpool owe these wages for at least the past three years.

118. Whirlpool's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

119. Because Whirlpool's decision not to pay overtime was not made in good faith, Whirlpool also owes Rodgers and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

120. Accordingly, Rodgers and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE MFWL
### AS TO RODGERS AND THE MASSACHUSETTS CLASS

121. Rodgers incorporates all other allegations.

122. The conduct alleged in this Complaint violates the MFWL, M.G.L. c. 151 *et seq.*

123. At all relevant times, Whirlpool has been an "employer" within the meaning of the MFWL.

124. At all relevant times, Whirlpool employed Rodgers and the other Massachusetts Class members as "employees" within the meaning of the MWFL.

125. The MFWL requires an employer like Whirlpool to pay overtime to all non-exempt employees. M.G.L. c. 151 § 1A.

126. Rodgers and the other Massachusetts Class members are non-exempt employees who are entitled to be paid overtime for all hours worked over 40 in a workweek at a rate of no less than 1.5x their regular rate. M.G.L. c. 151 § 1A.

127. Within the applicable limitations period, Whirlpool had a policy and practice of failing to pay proper overtime to the Massachusetts Class members for their hours worked in excess of 40 hours per week.

128. As a result of Whirlpool's failure to pay proper overtime to Rodgers and the Massachusetts Class members for work performed in excess of 40 hours in a workweek, Whirlpool violated the MFWL. M.G.L. c. 151 §§ 1A, 1B.

129. Rodgers and the Massachusetts Class members are entitled to overtime wages under the MFWL in an amount equal to 1.5x their regular rates of pay, treble damages as liquidated damages for lost overtime compensation, attorneys' fees, costs, and all other legal and equitable relief provided under the MFWL. M.G.L. C. 151 § 1B.

## RELIEF SOUGHT

Rodgers prays for judgment against Whirlpool as follows:

    a.    For an order certifying a collective action for the FLSA claims;

    b.    For an order certifying a class action for the Massachusetts law claims;

    c.    For an order finding Whirlpool liable for violations of state and federal wage laws with respect to Rodgers and all FLSA Collective and Massachusetts Class members covered by this case;

    d.    For a judgment awarding all unpaid wages, liquidated damages, and penalties to Rodgers and all FLSA Collective members covered by this case;

    e.    For a judgment awarding all unpaid wages, treble damages as liquidated damages, and penalties, to Rodgers and all Massachusetts Class members covered by this case;

    f.    For an equitable accounting and restitution of wages due to Rodgers and all FLSA Collective and Massachusetts Class members members covered by this case;

    g.    For a judgment awarding costs of this action to Rodgers and all FLSA Collective and Massachusetts Class members covered by this case;

    h.    For a judgment awarding attorneys' fees to Rodgers and all FLSA Collective and Massachusetts Class members covered by this case;

    i.    For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Rodgers and all FLSA Collective and Massachusetts Class members covered by this case; and

    j.    For all such other and further relief as may be necessary and appropriate.

Dated: <u>Apr. 5, 2022</u>

Respectfully submitted,

By: ____/s/ Matthew S. Parmet____
      **Matthew S. Parmet**
      TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**