UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AVERY LADD, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00330-RJJ-PJG |
| | FLSA Collective Action |
| v. | Judge Robert J. Jonker |
| WHIRLPOOL CORPORATION | Magistrate Judge Phillip J. Green |

**PLAINTIFF'S FIRST AMENDED COLLECTIVE ACTION COMPLAINT**

### SUMMARY

1. Like many other companies across the United States, Whirlpool's Kronos-bsed timekeeping and payroll systems were affected by a service outage beginning in December 2021.

2. That outage led to problems in timekeeping and payroll throughout Whirlpool's organization.

3. As a result, Whirlpool's workers who were not exempt from overtime requirements under federal and state law were not paid their proper overtime premium on time, if at all, for overtime hours worked during and after the Kronos outage.

4. Avery Ladd is one such Whirlpool worker.

5. Whirlpool could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the outage were resolved.

6. Instead, Whirlpool pushed the cost of the Kronos outage onto the most economically vulnerable people in its workforce.

7. Whirlpool made the economic burden of the Kronos outage fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

8. Whirlpool's failure to pay wages, including proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

9. Ladd brings this lawsuit to recover these unpaid wages and other damages owed by Whirlpool to himself and Whirlpool's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos outage, but also Whirlpool's decision to make its own non-exempt employees bear the economic burden for the outage.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Whirlpool is headquartered in this District.

## PARTIES

12. **Plaintiff Avery Ladd** is a natural person.

13. Ladd has been, at all relevant times, an employee of Whirlpool.

14. Ladd worked for Whirlpool from October 2019 to April 2022.

15. Ladd worked for Whirlpool during the Kronos outage.

16. Ladd represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former hourly and salaried employees of Whirlpool who worked in the United States at any time during Whirlpool's Kronos service outage, beginning on or about December 11, 2021, until the time that Whirlpool regained full access to all Kronos**

**products and services, <u>and</u> resumed normal employee timekeeping and payment operations.**

17. Together, throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

18. **Defendant Whirlpool Corporation ("Whirlpool")** is a foreign corporation.

19. Whirlpool maintains its headquarters and principal place of business in this District.

20. Whirlpool has been served in this matter.

21. At all relevant times, Whirlpool exerted operational control over its subsidiaries and alter egos.

22. At all relevant times, Whirlpool substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

23. At all relevant times, Whirlpool had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

24. Whirlpool's subsidiaries and alter egos include Acros, Affresh Applicnce Care, Amana, Bauknecht, Brastemp, Consul, Diqua, Everydrop, Gladiator, Hotpoint, Indesit, Jennair, KitchenAid, Maytag, Swash, and Yummly.

25. Whirlpool employed and/or jointly employed, with its subsidiaries and alter egos, Williams and the Similarly Situated Workers.

26. Whirlpool and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

27. Whirlpool and its respective subsidiaries and alter egos are joint employers for purposes of Massachusetts law.

28. Throughout this Complaint, Whirlpool and its subsidiaries and alter egos are referred to jointly as "Whirlpool."

### COVERAGE UNDER THE FLSA

29. At all relevant times, Whirlpool was an employer of Ladd within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30. At all relevant times, Whirlpool was an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31. At all relevant times, Whirlpool has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

32. During at least the last three years, Whirlpool has had gross annual sales in excess of $500,000.

33. During at least the last three years, Whirlpool was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

34. Whirlpool employs many workers, including Ladd, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

35. The goods and materials handled, sold, or otherwise worked on by Ladd, and other Whirlpool employees and that have been moved in interstate commerce include, but are not limited to, kitchen supplies and equipment.

### FACTS

36. Whirlpool is a kitchen and laundry company. Whirlpool, Our Company, https://whirlpoolcorp.com/our-company/ (last accessed Apr. 5, 2022).

37. Whirlpool employs around 69,000 people. Whirlpool, Our Company, https://whirlpoolcorp.com/our-company/ (last accessed Apr. 5, 2022).

38. Many of Whirlpool's employees are non-exempt hourly and salaried workers.

39. Since at least 2021, Whirlpool has used Kronos timekeeping software and hardware.

40. On or about December 11, 2021, Kronos suffered a disruption in service due to a ransomware attack.

41. The Kronos outage interfered with its clients, including Whirlpool's, ability to use Kronos's software and hardware to track hours and pay employees.

42. For at least a portion of time following the Kronos outage, Whirlpool failed to keep accurate track of the hours that Ladd and the Similarly Situated Workers worked.

43. Instead, Whirlpool used various methods to estimate the number of hours Ladd and the Similarly Situated Workers work in each pay period.

44. As a result of Whirlpool's failure to accurately track their actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

45. Many employees were not even paid their non-overtime wages for hours worked before 40 in a workweek.

46. Ladd is one of the thousands of Whirlpool employees affected by these pay and timekeeping practices.

47. Ladd worked 40 hours, or more, on multiple weeks during Whirlpool's Kronos outage..

48. But Ladd was not paid the proper overtime premium for all overtime hours worked for Whirlpool on time, if at all, each week during Whirlpool's Kronos service disruption, beginning on or about December 11, 2021.

49. Instead of paying Ladd for the hours he actually worked (including overtime hours), Whirlpool simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** Ladd's actual hours worked and regular pay rates, in multiple workweeks.

50. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other adjustments required by law.

51. Whirlpool knows they have to pay proper overtime premiums to non-exempt hourly and salaried employees.

52. Whirlpool knows this because, prior to the Kronos outage, it routinely paid these workers for all overtime hours at the proper overtime rates.

53. Whirlpool could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

54. Instead of accurately tracking hours and paying employees wages and overtime, Whirlpool decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

55. It was feasible for Whirlpool to have its employees and managers report accurate hours so they could be timely paid the full and correct amounts of money they were owed for the work they did for the company.

56. But Whirlpool chose not to do that.

57. In other words, Whirlpool pushed the effects of the Kronos outage onto the backs of their most economically vulnerable workers, making sure that it kept the money owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

58. Ladd is one of Whirlpool's employees who had to shoulder the economic burden of this decision by Whirlpool.

59. Ladd was and is a non-exempt hourly employee of Whirlpool.

60. Ladd regularly works over 40 hours per week for Whirlpool.

61. Since the Kronos outage, Whirlpool has not paid Ladd on time, if at all, for his actual hours worked each week.

62. Since the outage took place, Whirlpool has not accurately recorded the hours worked by Ladd and its other workers, in multiple workweeks.

63. Whirlpool was aware of the overtime requirements of the FLSA.

64. Whirlpool nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Ladd.

65. Whirlpool's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

66. The full overtime wages owed to Ladd and the Similarly Situated Workers became "unpaid" when the work for Whirlpool was done—that is, on Ladd and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*,

776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

67. At the time Whirlpool failed to pay Ladd and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Whirlpool became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under federal law.

68. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

69. Even if Whirlpool made any untimely payment of unpaid wages due and owing to Ladd or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

70. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

71. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Whirlpool's acts and omissions resulting in the unpaid wages in the first place.

72. Ladd and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by Whirlpool under federal law.

**COLLECTIVE ACTION ALLEGATIONS**

73. Numerous individuals were victimized by Whirlpool's patterns, practices, and policies, which are in willful violation of the FLSA.

74. Based on his experiences and tenure with Whirlpool, Ladd is aware that Whirlpool's illegal practices were imposed on the FLSA Collective.

75. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

76. These employees are victims of Whirlpool's unlawful compensation practices and are similarly situated to Ladd in terms of the pay provisions and employment practices at issue in this lawsuit.

77. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

78. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

79. Whirlpool's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

80. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

CAUSE OF ACTION—VIOLATIONS OF THE FLSA

81. Ladd incorporates each allegation set forth in paragraphs 1 through 80.

82. By failing to pay Ladd and the FLSA Collective members overtime at 1.5s their regular rates, Whirlpool violated the FLSA. 29 U.S.C. § 207(a).

83. Whirlpool owe Ladd and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

84. Whirlpool owe Ladd and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

85. Likewise, Whirlpool owes Ladd and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours. 29 C.F.R. § 778.315.

86. Whirlpool knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

87. Because Whirlpool knew, or showed reckless disregard for whether, their pay practices violated the FLSA, Whirlpool owe these wages for at least the past three years.

88. Whirlpool's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

89. Because Whirlpool's decision not to pay overtime was not made in good faith, Whirlpool also owes Ladd and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

90. Accordingly, Ladd and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including their agreed-upon wages up to 40 hours each week they worked overtime and overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

## RELIEF SOUGHT

Ladd prays for judgment against Whirlpool as follows:

  a. For an order certifying a collective action for the FLSA claims;

  b. For an order finding Whirlpool liable for violations of state and federal wage laws with respect to Ladd and all FLSA Collective members covered by this case;

  c. For a judgment awarding all unpaid wages, liquidated damages, and penalties to Ladd and all FLSA Collective members covered by this case;

  d. For a judgment awarding costs of this action to Ladd and all FLSA Collective members covered by this case;

  e. For a judgment awarding attorneys' fees to Ladd and all FLSA Collective members covered by this case;

  f. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Ladd and all FLSA Collective members covered by this case; and

  g. For all such other and further relief as may be necessary and appropriate.

Dated: Oct. 24, 2022

Respectfully submitted,

*/s/ Matthew S. Parmet*
By: _____
**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Michael N. Hanna**
MI Bar # P81462
**MORGAN & MORGAN, P.A.**
2000 Town Center, Suite 1900
Southfield, MI 48075
Phone (313) 251-1399
mhanna@forthepeople.com

**Attorneys for Plaintiff**

- 11 -

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

*/s/ Matthew S. Parmet*

**Matthew S. Parmet**