## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AVERY LADD, INDIVIDUALLY AND ON )
BEHALF OF ALL OTHERS SIMILARLY )
SITUATED, )
        )
        Plaintiff, )
        )
v. )       Case No. 1:22-CV-003330-RJJ-PJG
        )
WHIRLPOOL CORPORATION, )
        )
        Defendant. )

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "**Settlement Agreement**") is entered into by and between Plaintiff Avery Ladd ("**Ladd**"), on behalf of himself, and on behalf of all members of the Putative FLSA Collective (as that term is defined herein) and Whirlpool Corporation, including its past, present, and future parent companies, subsidiaries (direct and indirect), predecessors, successors, affiliates, and divisions (collectively "Whirlpool") (together, Ladd, the Putative FLSA Collective and Whirlpool are the "**Parties**"), pertaining to the alleged failure of Whirlpool during the time period December 5, 2021 to January 2, 2022, to accurately pay employees due to the Ultimate Kronos Group ("**Kronos**") experiencing a cybersecurity incident with respect to Kronos Private Cloud, which Whirlpool used for certain payroll and timekeeping functions for certain non-exempt employees (the "**Kronos Outage**").

WHEREAS, on April 5, 2022, prior named Plaintiff Micayl Rodgers commenced litigation under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, in the United States District Court for the Western District of Michigan (the "**Court**") in the above captioned matter (the "**Lawsuit**"), on behalf of himself, and on behalf of all current or former non-exempt employees of Whirlpool who worked in the United States at any time since the onset of the Kronos Outage. Subsequently, on October 24, 2022, Ladd filed the First Amended Complaint asserting the same claims under the FLSA;

WHEREAS, the Parties determined to attempt to resolve the claims on a global basis and retained mediator Dennis Clifford, Esq. to assist in that effort. After the provision of data and other information from Whirlpool and upon investigation by Plaintiff and his counsel of the claims in the Lawsuit, on April 20, 2023, the Parties participated in a day-long mediation session facilitated by Mr. Clifford, during which the Parties discussed the claims and defenses relating to the Lawsuit. Subsequent to the mediation the Parties continued to negotiate until reaching a settlement several weeks later;



Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

WHEREAS, the Parties have made a thorough and independent investigation of the facts and law relating to the allegations in the Lawsuit. In entering into this Settlement Agreement, the Parties have considered: (a) the facts developed during an informal confidential exchange of information and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged; and (c) the desirability of consummating this settlement according to the terms of this Settlement Agreement. The Parties have each concluded that the terms of this Settlement Agreement are fair, reasonable and adequate, and that it is in their best interests to settle the Lawsuit pursuant to the terms set forth herein; and

WHEREAS, in order to avoid the expense and burdens of further litigation, the Parties on behalf of themselves and for the benefit of all Releasees (as defined below) desire to resolve any and all suits, actions, causes of action, claims, or demands based on putative violations of the FLSA as well as putative violations of any state or local law related or pertaining to Whirlpool's alleged failure to accurately pay employees for all hours worked and all claims under the FLSA and any state or local law for the time period December 5, 2021 to January 2, 2022, relating to or arising out of the Kronos Outage, including, without limitation, all state, local, and federal claims for unpaid wages (whether minimum wage, overtime or other), failure to timely pay wages, failure to record hours worked, paystub requirements, regular rate claims, reimbursement, and all related claims for statutory damages or penalties, interest, liquidated damages, attorneys' fees, costs, expenses, and all other such amounts, and including, without limitation, all claims that have been asserted in the Lawsuit or that could have been asserted in the Lawsuit nationwide.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

### Definitions

1.      **Definitions**. The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

   a.      "Putative FLSA Collective" means all non-exempt employees, regardless of exact job, position held, or title, employed by Whirlpool in the United States from December 5, 2021 – January 2, 2022, who were employed in a job position that used (or would have used but for the Kronos Outage), Kronos Private Cloud to track their hours worked. Each such individual shall be a "Putative FLSA Collective member."

   b.      "FLSA Collective" means those Putative FLSA Collective members who have participated in this settlement by timely cashing, depositing, or otherwise negotiating their Settlement Check.

   c.      "Releasees" means Whirlpool, as defined above, as well as Whirlpool's employees; agents; managers; owners; members; officers; directors; partners; investors; legal representatives; accountants; trustees; executors; administrators; real or alleged alter egos; predecessors; successors; transferees; assigns; attorneys; and insurers.

   d.      "Plaintiffs' Counsel" or "Collective Counsel" means PARMET PC and MORGAN & MORGAN, P.A.

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

e.   "Whirlpool's Counsel" means MORGAN, LEWIS & BOCKIUS LLP.

f.   "Settlement Administrator" refers to the third-party settlement administrator, to be mutually agreed upon by the Parties, which will be retained to perform at least the following duties: (i) mailing notice, settlement checks, and applicable tax forms to Putative FLSA Collective members; (ii) notifying the Parties of FLSA Collective Members who join this settlement; and (iii) calculating individual settlement awards, including any appropriate withholdings.

g.   Gross Settlement Amount.  The Gross Settlement Amount is One Million, Seven Hundred and Seventy-Five Thousand Dollars and No Cents ($1,775,000.00) inclusive of payment for: (a) all FLSA Collective members; (b) the General Release Payment to Ladd; (c) all attorneys' fees, costs, and litigation expenses approved by the Court; (d) the FLSA Collective Members' share of applicable federal, state, and local taxes required to be withheld by Whirlpool; and (e) all costs and fees owed to the Settlement Administrator incurred in the administration of this settlement.

h.   Collective Settlement Amount. The amount remaining from the Gross Settlement Amount after the following amounts have been deducted: (i) amount approved by the Court for a General Release Payment to Ladd; (ii) the amount approved by the Court for the FLSA Collective's attorneys' fees, expenses, and costs; and (iii) the amount owed for Settlement Administration costs to the Settlement Administrator for performing any duties necessary to administer the settlement ("Administration Costs").

i.   Collective Groups. The following are the Collective Groups that comprise the Putative FLSA Collective and FLSA Collective. The Collective Groups have been determined based upon the complete pay records and time period at issue, as a result of the allegations at issue in the Lawsuit. The Parties acknowledge that Putative Collective and FLSA Collective members may fall within one or both of the following Collective Groups.  The total number of unique employees in the Putative FLSA Collective (inclusive of both Collective Groups) is approximately 15,835.

   i.    "Reconciled Employees" means those Putative FLSA Collective and FLSA Collective members who were potentially underpaid during the Kronos Outage but who later received such underpayment from Whirlpool. The total number of employees in this group is approximately 6,315.

   ii.   "Reconciled Ohio Employees" means those Putative FLSA Collective and FLSA Collective members who were potentially underpaid during the Kronos Outage but who later received such underpayment from Whirlpool and worked in Ohio. The total number of employees in this group is approximately 3,934.

   iii.  "Reconciled Massachusetts Employees" means those Putative FLSA Collective and FLSA Collective members who were potentially underpaid during the Kronos Outage but who later received such underpayment from

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

Whirlpool and worked in Massachusetts. The total number of employees in this group is approximately 106.

iv.  "Overpaid Employees" means those Putative FLSA Collective and FLSA Collective members who were potentially overpaid during the Kronos Outage.  The total number of employees in this group is approximately 9,520.

**2.**  **No Admission of Liability or Determination as to the Merits**. Releasees deny the allegations made in the Lawsuit and deny that they engaged in any wrongdoing or violation of law. Except for purposes of this settlement, neither this Settlement Agreement, nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, may be used in any way as an admission, concession, or indication by or against Releasees of any fault, wrongdoing, or liability whatsoever.

## RELEASE

**3.**  **Released Claims**. In consideration for the benefits to be received by Ladd and the FLSA Collective members under this settlement:

a.  Ladd and the FLSA Collective members shall be deemed to have released and forever discharged Releasees from all suits, actions, causes of action, claims, or demands based on putative violations of any federal, state, or local law, including the FLSA, related or pertaining to Releasees' alleged failure to accurately pay employees for all hours worked during the time period of December 5, 2021 through January 2, 2022, relating to or arising out of the Kronos Outage, including, without limitation, all state, local, and federal claims for unpaid wages (whether minimum wage or overtime), failure to timely pay wages, failure to record hours worked, paystub requirements, regular rate claims, reimbursement, and all related claims for statutory damages or penalties, interest, liquidated damages, attorneys' fees, costs, expenses, and all other such amounts, and including, without limitation, all claims that have been asserted in the Lawsuit or that could have been asserted in the Lawsuit nationwide, including but not limited to:

i.  All claims for unpaid wages, including but not limited to regular wages, minimum wages, and overtime wages in accordance with state, local, or federal law;

ii.  All claims for liquidated damages under the FLSA and all claims for penalties, interest, or other damages of any kind under any other applicable state or local wage-and-hour law;

iii.  All claims relating to the calculation or payment of wages, failure to timely pay wages, failure to record hours worked, paystub requirements, regular rate claims, recoupment of overpayment, reimbursement, and all related claims for statutory damages or penalties arising under the FLSA and/or any other applicable state or local wage-and-hour law or common law;

- 4 -

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

     iv.       All claims for conversion, breach of contract, quantum meruit, unjust enrichment, theft of labor, or other common law or statutory cause of action related to any alleged failure to pay for work performed or to be performed; and

     v.       All related claims for interest, costs, and attorneys' fees.

   b.    **Release Printed on Settlement Checks to Putative FLSA Collective Members.** The Parties agree to include mutually agreed upon release language in the form attached as Exhibit C on each settlement check tendered to Putative FLSA Collective members.

   c.    **General Release by Ladd.**  In exchange for payment of a General Release Payment, Ladd releases the Releasees from all claims or disputes made (or that could have been made) under federal, state or local law, common law, statute or regulation, including, but not limited to:  (1) any and all wage-and-hour claims of any nature whatsoever, including claims for alleged misclassification, salary basis violations, overtime pay, minimum wages, non-payment of wages, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind, including retaliation; (2) any and all claims of discrimination, harassment or retaliation including, but not limited to, claims for age discrimination under the Age Discrimination in Employment Act ("ADEA"), disability claims, retaliation claims, employee benefits claims; and (3) any claim, dispute, damages, or allegation of any nature whatsoever arising under any federal, state or local common law, regulation, constitution, or statute against any of the Releasees based on facts or circumstances existing up through and including the date of this Agreement. Excluded from this general release are any claims that cannot be waived as a matter of express law, including the right to file a charge with or participate in any investigation or proceeding conducted by the Equal Employment Opportunity Commission, the National Labor Relations Board, the Securities Exchange Commission, or any federal, state or local agency, or from exercising any rights under Section 7 of the National Labor Relations Act.  Ladd agrees to waive its right to recover monetary damages based on any released claims related to any such charge or proceeding or in any charge, complaint, or lawsuit filed by Ladd or by anyone else on Ladd's behalf, except that Ladd may receive monies that are properly awarded by the Securities Exchange Commission or where such a waiver of individual relief is prohibited.

SETTLEMENT IMPLEMENTATION

**4.**    **Approval of Settlement.**

   a.    All terms of this Settlement Agreement are contingent upon the approval of the settlement and certification by the Court of the FLSA Collective for settlement purposes only.

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

b.      Within 7 calendar days of the execution of this Settlement Agreement, Plaintiff will provide Whirlpool's Counsel with a draft of a motion for approval of this settlement and for dismissal of the Lawsuit with prejudice. The Parties will discuss in good faith any edits.

c.      Whirlpool may join in the motion, but shall not oppose a motion made under this section unless any provision of the motion is inconsistent with this Settlement Agreement or Whirlpool has some other good-faith basis for opposing.

d.      Provided the Court approves this settlement, Collective Counsel and Whirlpool's Counsel shall cooperate to secure the approval and dismissal with prejudice of the Lawsuit.

e.      The Parties agree that if the Court declines to approve this settlement the Parties agree to meet and confer in good faith to resolve any issues identified by the Court and to resubmit a revised settlement to the Court for approval. If the Parties cannot agree to resolve a dispute, they agree to take the dispute to the previous mediator, Dennis Clifford, Esq., to attempt to resolve such dispute.

**5.      Stipulation for Certification.**

a.      The Parties hereby stipulate, for settlement purposes only, to the following:

i.       Certification of the of the Putative FLSA Collective, for settlement purposes only, as defined herein, pursuant to 29 U.S.C. § 216(b);

ii.      Notification of the settlement to the Putative FLSA Collective, as defined herein, pursuant to 29 U.S.C. § 216(b), in the form of the notice attached hereto as **Exhibit A** (the "**Notice of Settlement**");

iii.     The designation of Avery Ladd as the Named Plaintiff and Collective Representative; and

iv.      The appointment of Plaintiffs' Counsel as Collective Counsel.

b.      If the settlement is not approved by the Court, Whirlpool's stipulations pursuant to this Section 5 shall be null and void, and may not be used or relied upon by anyone for any purpose whatsoever in this Lawsuit, or any other judicial, administrative, or arbitral proceeding. For the avoidance of doubt, in the event the settlement described in this Settlement Agreement is not approved by the Court or the Effective Date described in Section 6 does not occur, Whirlpool does not waive, and instead expressly reserves, its right to challenge and assert all arguments about the propriety of certification of any FLSA collective or other representative action. The Parties further agree that, other than to effectuate the settlement of this Lawsuit, the certification of the FLSA Collective for settlement purposes and all documents related thereto, including this Agreement and all accompanying exhibits and all orders entered by the Court in connection with this Agreement, shall not be admissible in any judicial, arbitral, administrative, investigative, or other court,

- 6 -

tribunal, forum, or other proceeding against any of the Releasees, including without limitation any wage-and-hour litigation.

c.     The settlement is contingent upon the Court's certification of the FLSA Collective and Court approval of the notice to the Putative FLSA Collective members, as defined in this Settlement Agreement. If the FLSA Collective is not certified by the Court or if notice of the settlement to the FLSA Collective or the Putative FLSA Collective is not approved by the Court and/or is materially modified in any way, the Settlement Agreement may be voided at either Party's option.

**6.     Effective Date**. The settlement shall become effective when all the following events have occurred:

a.     This Agreement has been executed by Ladd and Whirlpool;

b.     The Court has approved the settlement, including by certifying the FLSA Collective and approving notice to the Putative FLSA Collective, as defined in this Settlement Agreement, in the form of the Notice of Settlement; and

c.     The Court's entry of an Order Approving Settlement and the Court's order regarding attorneys' fees, costs, and general release award all become final because the following has occurred: (a) the expiration of one (1) business day after the time to file a motion to alter or amend the Order Approving Settlement under Federal Rule of Civil Procedure 59(e) has passed without such a motion having been filed; (b) the expiration of one (1) business day after the time in which to appeal the Order Approving Settlement has passed without any appeal having been filed (which date shall be deemed to be thirty (30) days following entry of the Order Approving Settlement); and (c) if such motion to alter or amend is filed, or if an appeal is taken, three (3) business days after a determination of such motion or appeal that permits the consummation of the settlement.

SETTLEMENT FUNDS AND AWARD CALCULATION

**7.     Settlement Amount**.

a.     **Gross Settlement Amount**. The total settlement amount to be made available in the "common fund" is One Million, Seven Hundred Seventy-Five Thousand Dollars and No Cents ($1,775,000.00) (the "**Gross Settlement Amount**").

b.     **No Recoupment of Overpayments**. Prior to this Lawsuit being filed, Whirlpool had already elected  not to recoup any overpayment amounts made to FLSA Collective members resulting from the Kronos Outage. The approximate overpayment amount is $3,485,371.28. Whirlpool hereby reaffirms and confirms that prior decision not to seek recoupment of overpayments.

c.     **Funding of Settlement**. Within 30 days of the Effective Date or the date by which the Settlement Administrator has established the Settlement Fund and provided Whirlpool's Counsel with wire instructions and other documentation necessary to

- 7 -

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

effectuate the transfer of funds to the Settlement Fund, whichever is later, Whirlpool shall cause to be deposited into an interest-bearing escrow account designated as a Qualified Settlement Fund pursuant to the Internal Revenue Code (the "**QSF**") designated by Ladd and under the control of the Settlement Administrator, the amount of $1,775,000.

d.    **Settlement Awards**. Each of the Putative FLSA Collective members shall be mailed a Settlement Check consisting of his or her settlement award from the Collective Settlement Amount (each a "**Settlement Award**"). The formula for distribution of the Collective Settlement Amount is set forth on **Exhibit B** and shall be calculated by the Settlement Administrator.

8.    **Process for Mailing the Notice of Settlement and Settlement Checks to Putative FLSA Collective Members.**

a.    Within 7 calendar days after the Effective Date, Whirlpool shall provide the Settlement Administrator with a list, in Microsoft Excel or Comma Separated Value format, of the names, employee numbers, last known physical addresses, and email addresses (where included in Whirlpool's employee records) of all Putative FLSA Collective members ("**Collective List**"), so that the Settlement Administrator can process and mail the Notice of Settlement and Settlement Awards to all Putative FLSA Collective members.

b.    Within 7 days of the Settlement Administrator's receipt of the Collective List and funds in the QSF, the Settlement Administrator will, in the following order: (1) determine the amount of the Collective Settlement Amount (as defined in Section 1(h)) available for distribution to the Putative FLSA Collective members; (2) using the formulas set forth in Exhibit B, issue the Notice of Settlement and the Settlement Award (consisting of a Settlement Check) to all Putative FLSA Collective members by USPS First Class U.S. Mail ("Check Issuance Date") and (3) disburse to Plaintiffs' Counsel the attorneys' fees and cost payment approved by the Court via wire, with instructions to be provided by Plaintiffs' Counsel. The Settlement Administrator shall certify in writing to the Parties' counsel the date that such mailing has been made.

c.    Prior to mailing, the Settlement Administrator will use all standard skip tracing devices or similar means to verify the accuracy of all physical addresses in the Collective List in order to ensure, to the extent reasonably practicable, that the Notice of Settlement and Settlement Awards are sent to all Putative FLSA Collective members at the physical addresses most likely to result in receipt of the Notice of Settlement and Settlement Award. This will include running the addresses through the National Change of Address database. With respect to returned envelopes, the Settlement Administrator will use reasonable diligence to obtain a current address and re-mail the envelope to such address within 10 days of the receipt of the returned envelope. Any Notices returned undeliverable during the Administration Period (defined below) shall be traced up to two times to obtain a new address and be re-mailed by First Class U.S. Mail.

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

d.    Each Settlement Check shall be valid for 120 days after issuance. In the event that a Settlement Check is lost or damaged, the Putative FLSA Collective member may request, at any time within the 120-day period, that a replacement check be issued. Within 21 days of a request for reissuance, a check for the amount of the expired check shall be issued to the requesting Putative FLSA Collective member, which shall be valid for 60 days after issuance or the remaining time left within the original 120-day period, whichever is longer.

e.    The total amount of any checks that are not cashed within the time periods as described in Section 8(d) shall revert back to Whirlpool in recognition of the fact that those individuals who do not cash their settlement checks do not release any claims against Whirlpool and the Releasees.

f.    All fees and costs incurred by the Settlement Administrator in administering this settlement, which shall include but not be limited to all fees and costs for: reproducing the Notice of Settlement; producing checks for FLSA Collective Members; postage to send the Notice of Settlement and settlement checks to FLSA Collective Members; notifying the Putative FLSA Collective members of the Lawsuit; performing skip tracing services; mailing appropriate tax forms to FLSA Collective Members; and other fees reasonably incurred by the Settlement Administrator and approved by the Parties (the "**Administration Costs**") shall be paid to the Settlement Administrator from the Gross Settlement Amount.

g.    The "**Administration Period**" is the period of time beginning on the date when the Gross Settlement Amount is paid to the Settlement Administrator through the later of:

   i.    the date that all of the settlement checks have been cashed and/or deposited by FLSA Collective members; or

   ii.   where the time for requesting a replacement check has passed for all FLSA Collective members and any replacement check requested has been issued, the date on which all uncashed and/or deposited checks (including replacement checks) have expired.

h.    Within 30 days following the Administration Period ("Final Accounting Date"), the Settlement Administrator shall provide a full accounting to Collective Counsel and Whirlpool's Counsel ("Final Accounting") which will include the following:

   i.    The total Administration Costs;

   ii.   The total amount of the cashed and/or deposited settlement checks (the "**Claimed Collective Settlement Amount**");

   iii.  The names of FLSA Collective Members who cashed their Settlement Award; and

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

iv.     The total amount of the Collective Settlement Amount remaining in the QSF which shall be returned to Whirlpool.

i.     **Reversion Date**. Funds due back to Whirlpool as set forth in the Final Accounting will be returned to Whirlpool via wire within 30 days of the Final Accounting Date. Whirlpool will provide wiring instructions to the Settlement Administrator.

9.     **Treatment of Settlement Awards by Collective Groups**.

a.     The entire amount of Settlement Award for each FLSA Collective Member, in any sub-group, will constitute liquidated damages in connection with the FLSA Collective members' claims under the FLSA and state law. No taxes or withholdings will be deducted, and the FLSA Collective members will be solely responsible for paying all applicable taxes legally owed by them with respect to any payment received by them under this Settlement Agreement and will hold Releasees, Whirlpool's Counsel, and the Settlement Administrator harmless from and against any taxes, penalties, and interest of any nature assessed as a result of any FLSA Collective Member's failure to properly pay such taxes. The Settlement Administrator will issue to each FLSA Collective member here an IRS Form 1099.

b.     Each FLSA Collective member will be responsible for the payment of any additional local, state, or federal taxes or withholdings resulting from or attributable to the payments received.

10.     **Collective Counsel's Attorneys' Fees and Costs**.

a.     Ladd and/or Collective Counsel may petition the Court for an award of attorneys' fees in conjunction with the Parties' settlement in an amount not to exceed forty percent (40%) of the Gross Settlement Amount, plus reasonable out-of-pocket costs and expenses. Whirlpool shall not oppose a request for fees and expenses up to and including this amount.

b.     The settlement is not conditioned on approval of Collective Counsel's attorneys' fees and expenses. To the extent that the attorneys' fees and expenses are not approved by the Court, the amounts of the application that are not approved shall be reallocated for the benefit of the FLSA Collective.

c.     The funds for the payment of approved attorneys' fees and expenses shall be paid to Collective Counsel by the Settlement Administrator at the same time as the Putative FLSA Collective members' Settlement Awards are mailed as outlined in paragraph 8(b) above.

d.     The attorneys' fees and costs paid by Whirlpool shall constitute full satisfaction of Releasees' obligations to pay amounts to any person, attorney, or law firm for attorneys' fees or costs in the Lawsuit on behalf of FLSA Collective members, and shall relieve Releasees from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

entitled on behalf of FLSA Collective members or otherwise in relation to the claims being released as described in Section 3.

e.   An IRS Form 1099 shall be provided to Collective Counsel for the payment of attorneys' fees and expenses made to Collective Counsel through Releasees. Each firm constituting Collective Counsel shall be solely and legally responsible to pay applicable taxes on the payment made to that firm.

**11.   General Release Payment**. In exchange for signing a General Release releasing all claims against Releasees, which is set forth above in Section 3, Ladd may seek approval of a payment not to exceed $5,000.00. This award is in addition to Ladd's individual Settlement Award, if any. Releasees agree not to object to such application. The General Release Payment shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099 (box 3), and shall not be subject to FICA and FUTA withholding taxes. Ladd is solely and legally responsible to pay applicable taxes on the General Release Payment and agrees to hold Releasees, Whirlpool's Counsel, and the Settlement Administrator harmless from and against any taxes, penalties, and interest of any nature assessed as a result of Ladd's failure to properly pay such taxes which are Ladd's responsibility.  The General Release Payment shall be paid from the Gross Settlement Amount.

**12.   No Claim Based Upon Distributions or Payments in Accordance With This Settlement Agreement**. No person shall have any claim against Ladd, any FLSA Collective member, Releasees, the Settlement Administrator, Collective Counsel, or Whirlpool's Counsel based on distributions or payments made in accordance with this Settlement Agreement.

**13.   Confidentiality**.  In the event that Ladd and/or Whirlpool (including through their respective counsel) is requested or compelled by legal subpoena, court order, or other legal process, to disclose or provide non-public documents obtained or information learned during the course of this Lawsuit to third parties, that Party shall notify the other Party (through undersigned counsel and, for Whirlpool, also via Anil K. Chaddha, Senior Director, HR Legal, anil_k_chaddha@whirlpool.com) via email or as otherwise necessary to provide notice to the other Party as soon as practicable and within one week at the latest after receiving such a request, subpoena, or court order. Ladd and/or Whirlpool (including through their respective counsel) mutually agree not to disclose or provide non-public documents obtained or information learned during the course of this matter to third parties unless legally compelled to do so.

MISCELLANEOUS

**14.   Whirlpool's Legal Fees**. Whirlpool's legal fees, costs, and expenses in the Lawsuit shall be borne by Whirlpool.

**15.   Nullification of the Settlement Agreement**. In the event the settlement does not become final for any reason, this Settlement Agreement shall be null and void, and the Parties shall be returned to the status quo ante. If this occurs, the Parties shall proceed in all respects as if the Settlement Agreement had not been executed subject to the provisions in Sections 2 and 16.

**16.   No Publicity.** The Parties mutually agree that, other than as may be reasonably required to effectuate the terms of the settlement, they shall not disclose or publicize non-public information

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

related to the settlement, except to the Settlement Administrator, Putative FLSA Collective members, and FLSA Collective members. The Parties mutually agree that they shall not mention the settlement on any web site, including any social media, and that they shall not issue any press release or hold any press conference related to the settlement. The Parties shall not initiate contact with any the media or provide comments to the media concerning the terms or monetary amount of the settlement.

    a.    Nothing in this section is intended to be, nor shall be construed as, a restriction upon the right to practice law by either Party's counsel by prohibiting the disclosure of information contained within public court records.

    b.    Nothing in this section shall prohibit Releasees from disclosing details of the settlement to: their accountants; tax preparers and advisors; auditors; attorneys; insurance carriers or prospective insurance carriers; financial regulators; a court, agency, or other third party as required by law, regulation, or court order, including any reporting obligations to shareholders or government agencies under any federal or state law. Likewise, nothing in this section shall prohibit Releasees from disclosing the terms of the settlement to any of their board members, executives, managers, members, or other employees or contractors who have a legitimate need access to the information for Releasees' business or legal operations.

**17.    Severability**. If for any reason any term or provision of this Settlement Agreement is held to be invalid or unenforceable to any extent, then (a) such term or provision will be interpreted, construed, or reformed to the extent reasonably required to render the same valid, enforceable, and consistent with the original intent underlying such provision; (b) such term or provision will remain in effect to the extent that it is not invalid or unenforceable; and (c) such invalidity or unenforceability will not affect any other term or provision of this Settlement Agreement; provided however, that the paragraphs included in Section 3 (Release, Gross Settlement Amount, and Collective Settlement Amount) are material terms whose inclusion is essential to this Settlement Agreement. If any term or provision is held to be invalid or unenforceable to any extent, or if is edited or reformed in any way, then this Settlement Agreement may be voided at either Party's option. The Parties agree to cooperate to address and resolve any such issues as they arise, and to use reasonable, good-faith efforts to uphold the settlement reached by the Parties.

**18.    Inadmissibility of Settlement Agreement**. Except for purposes of (a) settling the Lawsuit or (b) enforcing this Agreement, neither this Settlement Agreement, nor its terms, nor any document, statement, proceeding, or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication, or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession, or damage.

**19.    Computation of Time**. For purposes of this Settlement Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by Federal Rule of Civil Procedure 6(a)(6)), such time period shall be continued to the following business day.

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

20.     **Amendment or Modification**. This Settlement Agreement may be amended or modified only by a written instrument signed by the Parties or their successors in interest or by duly authorized counsel for such persons or entities. Any such amendment or modification will only become effective upon approval by the Court. Other than a Court deadline, any deadline in this Agreement may be extended by agreement of the Parties.

21.     **Entire Settlement Agreement**. This Settlement Agreement constitutes the entire agreement between the Parties, and no oral or written representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such documents. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that, in entering into this Settlement Agreement, they have not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement.

22.     **Binding on Successors and Assigns**. This Agreement shall be binding upon, and inure to the benefit of Ladd, the FLSA Collective, Releasees, and each of their heirs, beneficiaries, executors, administrators, successors, transferees, successors, or assigns.

23.     **Counterparts**. This Settlement Agreement may be executed in one or more counterparts, including by electronic signature, facsimile, or email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

24.     **Cooperation and Drafting**. The Parties have cooperated in the drafting and preparation of this Settlement Agreement; hence the drafting of this Settlement Agreement shall not be construed against any of the Parties. The Parties agree that the terms and conditions of this Settlement Agreement were negotiated at arm's-length and in good faith by the Parties, and the terms and conditions reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel, or the full and unimpeded opportunity to consult with such legal counsel.

25.     **Bona Fide Dispute**. The Parties agree this Settlement Agreement is a resolution of a bona fide dispute and related claims. Nothing in this Settlement Agreement constitutes an admission that Releasees violated any applicable law.

26.     **Captions**. The captions or headings of the sections and paragraphs of this Settlement Agreement have been inserted for convenience of reference only and shall have no effect on the construction or interpretation of any part of this Settlement Agreement.

27.     **Authority of Whirlpool's Signatories**. By executing this Settlement Agreement, Whirlpool represents and warrants that it is a business entity, existing and in good standing under the laws of its state of formation, and that the person executing this Settlement Agreement on its behalf is fully authorized to bind it. The person executing this Settlement Agreement on each entity's behalf likewise represents and warrants that they have been authorized to execute and enter into this Settlement Agreement on behalf of the respective entity.

- 13 -

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

**28.    Continuing Jurisdiction**. The Parties agree that the Court shall retain jurisdiction to enforce and interpret the Settlement Agreement, and that the Court has personal jurisdiction over the Parties and shall maintain that jurisdiction for purposes of resolving any disputes between the Parties concerning compliance with the Settlement Agreement.

**29.    Signature**. An electronic or facsimile signature shall be deemed to be an original for all purposes.

**30.    Choice of Law and Venue of Disputes**. This Settlement Agreement shall be construed under Michigan law, without regard to any choice of law principles, except to the extent any law of the United States governs any matter set forth, in which case federal law shall govern. Any dispute arising under this Settlement Agreement shall have venue exclusively in the United States District Court for the Western District of Michigan.

**31.    Acknowledgment.** Each Party executing this Settlement Agreement confirms they are doing so knowingly and voluntarily and that they have read this Settlement Agreement, have understood it, and have entered into it after being advised by their respective attorneys, or with the complete opportunity to do so.

   IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as follows:

_Avery Ladd_

_____

Avery Ladd
individually and on behalf of the FLSA Collective

Date: 10 / 24 / 2023

_Kyle P De Jong_

_____

On behalf of Whirlpool Corporation

Date: 11/9/23

Name   Kyle De Jong

Title    Vice President

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

**EXHIBIT A**

**NOTICE OF SETTLEMENT**

(Attached)

Doc ID: 4633bf2b723d236c90ebc57fc90039b6ece1b1b7

## NOTICE OF SETTLEMENT OF WAGE CLAIMS FOR EMPLOYEES OF WHIRLPOOL

---

**TIME-SENSITIVE, COURT-AUTHORIZED NOTICE**
**\* \* \* This is not an advertisement from a lawyer. \* \* \***

---

**This Notice explains your legal rights and options regarding a settlement with Whirlpool for employee wage claims regarding the Kronos outage beginning in December 2021**

| 1. | What is this about? |
|---|---|

A lawsuit was filed against Whirlpool Corporation ("Whirlpool") for unpaid or delayed wages under a federal law, the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and related state-law claims.

The lawsuit arises out of a December 2021 ransomware attack on the Kronos Private Cloud, a third-party system used by Whirlpool at that time for certain payroll and timekeeping functions, resulting in a system-wide outage (the "Kronos Outage"). The Kronos Outage impacted certain of Whirlpool's timekeeping and pay functions for days worked between December 5, 2021, and January 2, 2022 (the "Impacted Pay Periods").

The lawsuit was filed by a Whirlpool employee who claims he and other employees were not timely or accurately paid wages for work performed during the Impacted Pay Periods. The case is *Ladd v. Whirlpool Corporation*, Case No. 1:22-cv-00330-RJJ-PJG, in the Southern Division of the United States District Court for the Western District of Michigan.

The Court has not determined that Whirlpool is liable or did anything wrong. Instead, the employee and Whirlpool reached a settlement to resolve the case. The Court overseeing the lawsuit has approved that settlement, which provides for the payment of money to all non-exempt employees of Whirlpool during the Impacted Pay Periods who used the Kronos Private Cloud system at the time of the Impacted Pay Periods to track their hours (or would have used it but for the Kronos Outage) and who choose to join the settlement.

| 2. | Why am I getting this notice? |
|---|---|

You have been identified as being eligible to recover money from the settlement because Whirlpool's records reflect that you were a non-exempt employee who worked for Whirlpool and used impacted Kronos systems for certain pay and time keeping functions during the Impacted Pay Periods. In order to recover money, you must join the settlement. If you do not join the settlement, you will not receive any money.

| 3. | What is my share of the settlement? |
|---|---|

Some of Whirlpool's employees affected by the Kronos Outage were initially underpaid for work performed during the Impacted Pay Periods, and some were correctly paid or overpaid. Some of the underpaid employees were only underpaid a small amount. Following the Kronos Outage, Whirlpool engaged in a reconciliation process. Based on this reconciliation, each employee, including you, was classified as an underpaid, correctly paid, or overpaid employee.  If Whirlpool determined you were underpaid, it issued a reconciliation payment to you at that time. Whether you were underpaid, correctly paid, or overpaid, you are still eligible to participate in this lawsuit. Your settlement payment is based on your hours worked with Whirlpool during the Impacted Pay Periods, the amount you were paid for that work, and whether you were an underpaid, correctly paid, or overpaid employee.

If you were **underpaid**, you are receiving one check representing "liquidated damages," which is a proportional amount of the wages at issue based on the amount in the settlement fund. This payment is a minimum of $30.00.

If you were **correctly paid** or **overpaid**, you are receiving one check representing "liquidated damages" in the amount of $30.00. This payment is being made to resolve any potential claims you might have.

If you worked in **Ohio** or **Massachusetts**, you are receiving an additional amount of $30.00. This additional amount is being paid due to the settlement of any potential state law claims you might have.

| 4. | How do I get the money offered? |
|---|---|

| To join the settlement:<br><br>**CASH THE CHECK** | If you choose to be included in the settlement, all you need to do is deposit or cash the enclosed check. |
|---|---|
| To stay out of the settlement:<br><br>**DO NOTHING** | If you do not want a payment or other benefits from this settlement and you want to retain the right to sue Whirlpool on your own about any of the wage claims that were settled in this lawsuit, then **do not** deposit or cash the enclosed check. By doing nothing, you give up the possibility of getting money from the settlement of this lawsuit. If you were overpaid, you may also be required to pay Whirlpool for any overpayment made to you that has not already been repaid. |

| 5. | What happens if I complete the claim form? |
|---|---|

If you deposit or cash the enclosed check, you agree to the following:

You will be acknowledging that you are represented by PARMET PC and MORGAN & MORGAN, P.A. (together, the "Collective Attorneys") and that you will be bound by the terms of the attorney-client agreement signed by the lead plaintiffs in the lawsuit. You will **not** have to pay the Collective Attorneys any money directly. Attorneys' fees and costs will be paid as part of a percentage of the overall settlement recovery funded by Whirlpool.

You will be waiving and releasing all claims against Whirlpool for unpaid or delayed wages, including overtime and penalties, related to the Kronos Outage and for work performed for Whirlpool during the Impacted Pay Periods.

| 6. | What does the Court think? |
|---|---|

While the Court approved this settlement, the Court did not determine that Whirlpool (or anyone else) did anything wrong. The Court did not determine you are owed any money. Instead, this is a settlement payment.

**Do not contact the Court regarding this settlement. The Court must remain neutral in this matter and cannot give you advice.**

| 7. | What does Whirlpool think? |
|---|---|

Whirlpool denies it violated any law or otherwise did anything wrong in its response to the Kronos Outage. Whirlpool believes you were paid correctly and fairly for your work. Whirlpool also does not think a collective action (group lawsuit) is appropriate. Whirlpool acknowledges the risks, costs, and distractions associated with any litigation, however, and believes this settlement is a fair solution to this lawsuit.  Whirlpool therefore encourages all employees to join in this settlement. No adverse employment action will be taken against you whether or not you join this settlement and cash or deposit your settlement checks.

| 8. | How long do I have to make a decision? |
|---|---|

**You can deposit or cash the enclosed check within 120 days of the date it was issued. If you lose or damage the check during that 120-day period, you can contact the Collective Attorneys to request that a replacement check be issued. Any reissued replacement check will be valid for 60 days after issuance or the original 120-day deadline, whichever is later.**

| 9. | I still have questions. Where can I get more information? |
|---|---|

This Notice is only a summary. If you would like, you can obtain certain documents related to the case. However, the deadline for cashing your check will not be extended.

If you have any questions about the collective action or your legal rights, you should contact the attorneys for the group of Whirlpool employees:

Matthew S. Parmet
PARMET PC
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5228
team@parmet.law

Michael N. Hanna
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, MI 48075
phone  313 251 1399
mhanna@forthepeople.com

**EXHIBIT B**

**FORMULA FOR DISTRIBUTION OF SETTLEMENT**

- For the Collective Groups, the Gross Settlement Amount shall be allocated as follows, prior to the deduction of court-approved attorneys' fees and costs, the General Release Payment, and administrative fees and costs (including those of the Settlement Administrator), which will be used to determine the Collective Settlement Amount, as defined in Paragraph 1 of the Settlement Agreement and which will be the actual amount available for distribution to Putative FLSA Collective members:

  i.   For the "Reconciled Employees" group, an estimated amount of $1,368,200 from the Gross Settlement Fund, to be allocated on a pro-rata share of their allegedly late paid amount as compared to the total amount of the "Reconciled Employees" Putative FLSA Collective members' aggregate underpayment amount.  The actual amounts distributed will be determined by the portion of the Collective Settlement Amount allocated to the "Reconciled Employees" group as described herein. For example, if a Putative FLSA Collective member's personal late paid amount was 0.1% of the total "Reconciled Employees" Putative FLSA Collective members' aggregate underpayment amount, then that claimant shall receive 0.1% of the portion of the Collective Settlement Amount allocated to the "Reconciled Employees" group, as described herein. However, "Reconciled Employees" Putative FLSA Collective members shall each receive a minimum of $30.00 from the net settlement amount if their pro-rata share results in a potential payment of less than $30.00.  This may require the Settlement Administrator to recalculate the pro rata shares. In no way will this result in an increase of the Gross Settlement Amount.

  ii.  For the "Reconciled Ohio Employees" group, an estimated amount of $118,020 from the Gross Settlement Fund, with each individual allocated $30.00 in addition to the payment described above in subsection (i).

  iii. For the "Reconciled Massachusetts Employees" group, an estimated amount of $3,180 from the Gross Settlement Fund, with each individual allocated $30.00 in addition to the payment described above in subsection (i).

  iv.  For the "Overpaid Employees" group, an estimated amount of $285,600 from the Gross Settlement Fund, with each individual allocated $30.00.

## EXHIBIT C

## SETTLEMENT CHECK LANGUAGE

**Attention:** By cashing, depositing, transferring, or otherwise negotiating the enclosed check you are agreeing to a full and complete release of any and all claims related to the Kronos Outage that you may have against the Releasees from December 5, 2021 through January 2, 2022, including wage-and-hour claims under the Fair Labor Standards Act and/or any state/local law. The claims you are releasing include all known or unknown claims for any wage-and-hour violations, including but not limited to, claims related to minimum wage, overtime, wage rate, timing of payment, timekeeping, or time worked related to the Kronos Outage and including all related claims for penalties, interest, and attorneys' fees. The wage-and-hour claims you are releasing specifically include claims that you raised or could have raised as an opt-in plaintiff in the lawsuit: *Avery Ladd, individually and on behalf of all others similarly situated v. Whirlpool Corporation*, Case No. 1:22-cv-00330-RJJ-PJG. The Releasees include: (1) Whirlpool Corporation,  (2) Whirlpool Corporation's current or former parent companies, subsidiary companies (indirect and direct), and/or related, affiliated, companies, partnerships, and/or joint ventures; and (3) each of their respective past, present, and future employees, trustees, officers, partners, principals, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit program administrators, and fiduciaries.