**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| AVERY LADD, individually and on behalf of all others similarly situated, | **Case No. 1:22-cv-00330-RJJ-PJG** FLSA Collective Action |
| v. | Judge Robert J. Jonker |
| WHIRLPOOL CORPORATION | Magistrate Judge Phillip J. Green |

**LADD'S MEMORANDUM IN SUPPORT OF**
**UNOPPOSED MOTION TO APPROVE SETTLEMENT AGREEMENT**

Respectfully submitted,

**PARMET PC**
  Matthew S. Parmet
  TX Bar # 24069719
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5228
matt@parmet.law

**MORGAN & MORGAN, P.A.**
  Michael Hanna, Esq.
  MI Bar # P81462
2000 Town Center, Suite 1900
Southfield, MI 48075
Telephone: (313) 739-1951
Facsimile: (313) 739-1975
Email: mhanna@forthepeople.com

**Attorneys for Plaintiff**

TABLE OF CONTENTS

A.    SUMMARY ........................................................................ 1

B.    FACTUAL & PROCEDURAL BACKGROUND ................................... 1

C.    THE SETTLEMENT AGREEMENT .............................................. 4

D.    ARGUMENT & AUTHORITIES .................................................. 4

       1.    The Parties have agreed to the terms of the Settlement Agreement. ................... 4

       2.    The Settlement represents a reasonable compromise of this litigation. ............... 6

              2.1.    Factor 1: There was no fraud or collusion in reaching the settlement. ........... 6

              2.2.    Factors 2-4: If not resolved, further, extensive litigation would follow. ........... 7

              2.3.    Factor 5: Settlement is in the best interest of Plaintiff and the collective. ....... 8

              2.4.    Factor 6: In an FLSA settlement, there are no absent class members. .......... 10

              2.5.    Factor 7: The public interest is served by settlement. ................................. 11

       3.    Notice should issue to the proposed collective. ................................. 11

       4.    The Court should allow a service award for the Named Plaintiff. ..................... 11

       5.    Plaintiff's attorneys' fees and litigation expenses are part of the settlement. ....... 13

              5.1.    The requested fees are squarely within a reasonable percentage range. ........ 14

              5.2.    Factor 1: Value of the benefit provided. ..................................... 15

              5.3.    Factor 2: Value of services on an hourly basis. .......................... 17

              5.4.    Factor 3: Contingent nature of fees. ........................................... 21

              5.5.    Factor 4: Society's interest in compensating successful attorneys. ............... 22

              5.6.    Factor 5: Complexity of the litigation ....................................... 22

       6.    Plaintiff's counsel is entitled to recover reasonable costs and expenses. ............. 23

E.    CONCLUSION ................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Askew v. Inter-Cont'l Hotels Corp.*, 620 F.Supp.3d 635 (W.D. Ky. 2022) ............................4, 5

*Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822 (N.D. Ohio Mar. 26, 2019) ............................................................................................................ 17, 18, 22

*Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023 (W.D. Tex. Dec. 22, 2020) .................................................................................................... 13

*Blanchard v. Bergeron*, 489 U.S. 87 (1989).......................................................................... 22

*Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890 (1st Cir. 1985) ... 20

*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D. Ohio 1996) ................................................ 14

*Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855 (S.D. Ohio Nov. 8, 2018) ..... 17

*Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 604 F. Supp. 68 (S.D. Ohio 1984) .......................................................................................................................... 5

*Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001) ........................................... 6

*Caligiuri v. Symantec Corp.,* 855 F.3d 860 (8th Cir. 2017) ................................................... 12

*Castillo v. Morales, Inc.*, No. 2:12-cv-00650, 2015 WL 13021899 (S.D. Ohio Dec. 22, 2015). 12

*Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 WL 12868277 (W.D. Tenn. May 22, 2012) ........................................................................................................................ 22

*Cochran v. Zeon D.P., LLC*, 638 F. Supp. 2d 759 (W.D. Ky. 2009) ........................................ 5

*Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008 (S.D. Ohio Jan. 25, 2011)............ 21

*Cosgrove v. Sullivan*, 759 F.Supp. 166 (S.D.N.Y. 1991) ...................................................... 20

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ................................................................. 9

*Crosby v. Bowarter Inc. Ret. Plan*, 262 F.Supp.2d 804 (W.D. Mich. 2003).............................. 21

*Daoust v. Maru Rest., LLC,* No. 17-CV-13879, 2019 WL 2866490 (E.D. Mich. July 3, 2019) 14

*Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H–99–4137, Civ.A.H–99–4212, 2001 WL 34633373 (S.D. Fla. Dec. 19, 2001) ........................................................................... 21

*Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) ................................................................................................................. 18

*Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793 (M.D. La. Apr. 26, 2010) ........................................................................................................... 7

*Estevez v. Change Healthcare, Inc.*, No. 3:22-cv-00327, ECF No. 35 (M.D. Tenn. Jun 13, 2023) ....................................................................................................................... 17

*Evans v. Jeff D.*, 475 U.S. 717 (1986) .................................................................................. 5

*Faught v. American Home Shield Corp.*, 668 F.3d 1233 (11th Cir. 2012)................................. 15

*Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994) ............................................................... 13, 22

*Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *7 (S.D. Ohio Sep. 9, 2016) ...................................................................................................................... 18

*Fitzgerald v. P.L. Mktg., Inc.,* No. 217CV02251SHMCGC, 2020 WL 3621250 (W.D. Tenn. July 2, 2020).................................................................................................................. 14

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) ..................................... 15

*Glass v. UBS Financial Servs., Inc.*, No. C-06-4068, 2007 WL 221862 (N.D. Cal. 2007) ........ 12

*Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ...................................................................................................................... 20

*Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878 (S.D. Ind. May 3, 2023)............................................................................................................ 9

*Helms v. Morton Buildings, Inc.*, No. 3:18-CV-01281, 2020 WL 13468848 (M.D. Tenn. Apr. 15, 2020) ...................................................................................................................... 17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983).................................................................... 13, 15

*Hiser v. NZone Guidance, LLC*, No. 1:18-CV-1056-RP, 2021 WL 2934896 (W.D. Tex. Jan. 25, 2021) ........................................................................................................................ 5

*In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ............................................. 21

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006).................................... 18

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)................................... 23

*In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999)........................................ 21

*In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ................................................................................ 21

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990)............ 12

*In re Flint Water Cases*, 583 F.Supp.3d 911 (E.D. Mich. 2022) ............................................. 15

*In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012).............................................................................. 5

*In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587 (E.D. Pa. 2005) .................................... 20

*In re RJR Nabisco*, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ......................................... 20

*In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391 (S.D. Fla. Aug. 5, 2013) ................................................................................................................ 15

*Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468 (5th Cir. 2011) ........................................ 5

*Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016)........ 12

*Lawson v. Procare CRS, Inc.*, No. 18-cv-00248-TCK-JFJ, 2019 WL 112781 (N.D. Okla. Jan. 4, 2019) ...................................................................................................................... 10

*Love v. Gannett Co. Inc.*, No. 3:19-CV-296-BJB-RSE, 2021 WL 4352800 (W.D. Ky. Sept. 24, 2021) .................................................................................................................. 17

*Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ............................................................... 12

*Marshall v. Coca-Cola Consolidated Inc.*, No. 3:22-cv-00214-RJC-SCR, ECF No. 27 (W.D.N.C. Oct. 18, 2023) ................................................................................. 17

*Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212 (W.D. Mich. 2018).................................. 19

*McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703, at *1 (W.D. Mo. Aug. 4, 2015) ............................................................................................ 12

*Mercer v. Knox Educ. Serv. Ctr.*, No. 2:21-CV-5092, 2022 WL 7482593 (S.D. Ohio Oct. 13, 2022) ............................................................................................................................ 4

*Merkner v. AK Steel*, No. 1:09–CV–423–TSB, 2011 WL 13202629 (S.D. Ohio Jan. 10, 2011) .............................................................................................................................. 21

*O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780 (W.D. Tenn. Dec. 22, 2020) .........................................................................6, 11

*Osman v. Grube*, No. 3:16-cv-00802-JJH, 2018 WL 2095172 (N.D. Ohio May 4, 2018)....... 17

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) ................................. 13

*Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) ................................................................................ 17

*Sanders v. MPRI, Inc.,* No. 5:08-cv-00345-R, ECF No. 180 (W.D. Okla. Oct. 19, 2009) ....... 12

*Sandras v. Expeditors and Prod. Servs. Co.*, C.A. No. 16-0239, 2019 WL 658819 (W.D. La. Feb. 13, 2019)............................................................................................................. 9

*Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000).......... 16

*Sims v. Hous. Auth. City of El Paso*, No. EP-10-CV-109-PRM, 2012 WL 10862119 (W.D. Tex. Feb. 29, 2012)................................................................................................................ 6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................................. 15

*Stevens v. PepsiCo Inc.*, No. 7:22-cv-00802-NSR, ECF No. 73 (S.D.N.Y. Dec. 2, 2022)........... 9

*Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014). 14, 23

*Toliver v. JBS Plainwell, Inc.*, No. 1:11-CV-302, 2016 WL 165031 (W.D. Mich. Jan. 14, 2016) ............................................................................................................................. 19

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294 (N.D. Cal. 1995) ............................... 12

*Venable v. Am. Consulting and Testing Inc.*, No. 6:20-cv-01232, 2022 WL 595738 (W.D. La. Feb. 25, 2022)................................................................................................................. 9

*Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415  (E.D. Ky. May 12, 2020) ........................................................................................................................11, 17

*Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009)................................. 12

*Woodruff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) ..................................................................................................................... 17

**Statutes**

29 U.S.C. § 216 ....................................................................................................11, 13

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................10, 16

Fed. R. Civ. P. 41 ........................................................................................................ 5

**Other Authorities**

Federal Judicial Center, Manual for Complex Litigation (4th)......................... 18

State Bar of Michigan, 2023 Economics of Law Survey Results, https://www.michbar.org/file/pmrc/pdfs/2_2023EOL_SurveyResults.pdf (2023) ..... 19

USA Today, *Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*, https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (Dec. 13, 2021) ............................................................................ 1

## A. SUMMARY

Avery Ladd requests the Court approve the settlement reached in this Fair Labor Standards Act (FLSA) case. The settlement represents the culmination of Plaintiff's and Plaintiff's counsel's investigation, litigation, and negotiation. It completely resolves Plaintiff's, and the rest of the proposed collective's, claims at issue in this lawsuit. The settlement is fair and reasonable, and it will provide meaningful relief to Ladd and the similarly situated employees of Whirlpool who opt-into the Settlement, in light of the inherent risks of litigation and trial. Whirlpool has defended the claims in this lawsuit and continues to deny any wrongdoing, that it violated any federal or state wage-and-hour law, and that any damages are owed.

For these reasons, settlement of this matter is in the best interest of Ladd and the proposed collective members. The Court should approve the Parties' Settlement Agreement and dismiss Plaintiff's claims with prejudice.

## B. FACTUAL & PROCEDURAL BACKGROUND

Whirlpool is a kitchen and laundry company with thousands of employees in various states. ECF No. 22, ¶¶ 36-37. To track time, calculate overtime, and process payroll for certain hourly employees, Whirlpool used Kronos, a cloud-based timekeeping and payroll system operated and maintained by the Ultimate Kronos Group, Inc. ("UKG"). *Id.* at ¶ 39.

On December 11, 2021, the Kronos cloud system became inoperable, which UKG reported was caused by a cyberattack. USA Today, *Ransomware attack on Kronos could disrupt how companies pay, manage employees for weeks*, https://www.usatoday.com/story/tech/2021/12/13/kronos-ransomware-attack-2021/6501274001/ (Dec. 13, 2021). The outage of Whirlpool's Kronos system ultimately

lasted for two pay periods (the "Impacted Pay Periods").

During the Impacted Pay Periods, Whirlpool switched to an alternative timekeeping system that required employees and managers to report time manually. ECF No. 28. The time entries were submitted through their supervisors.  Around January 2, 2022, Whirlpool switched to an on-premises version of Kronos, which limited the impact of the Kronos Outage to the Impacted Pay Periods. For the Impacted Pay Periods, Whirlpool tracked time using spreadsheets, employee input, and, in certain facilities where the Kronos clocks still had storage available, the Kronos timeclocks. In doing so, Whirlpool relied on reasonable measures to best calculate the wages owed for the Impacted Pay Periods in order to ensure that paychecks thousands of employees were issued on the regularly scheduled pay dates. Once Whirlpool gained access to the data stored in the Kronos system, the Company engaged in a comprehensive reconciliation process to determine the exact amount of wages owed based on the actual hours worked during the Impacted Pay Periods.

As a result of Whirlpool's reconciliation process, it determined that it had initially underpaid or not paid on the normal pay date wages in the aggregate amount of $2,304,757 to 6,315 non-exempt employees for work performed during the Impacted Pay Periods. Any portion of this aggregate amount determined by Whirlpool to be still owing was paid at the conclusion of the reconciliation (prior to the date suit was filed). Ladd contends that, because these wages were not paid on time, liquidated damages are owed irrespective of the reconciliation. During its reconciliation process, Whirlpool also determined that it had net overpaid wages to 8,892 non-exempt employees in the final aggregate amount of $3,485,371

for work performed during the Impacted Pay Periods.[1]  Whirlpool contends that, at the conclusion of its reconciliation process, Whirlpool it decided to allow any employee who had been overpaid for work performed during the Impacted Pay Periods to retain that overpayment, and that it had communicated that decision to its workforce.

On April 5, 2022, Micayl Rogers brought claims under the FLSA to recover the unpaid wages, including overtime, and liquidated damages owed to himself and Whirlpool's allegedly similarly situated employees as a result of the Kronos Outage. On October 24, 2022, Ladd filed an Amended Complaint substituting Ladd as the named Plaintiff. After substantial efforts between the Parties and their counsel, the Parties ultimately agreed to exchange information and participate in mediation to determine if this action could be settled on a global basis, in an effort to try to resolve this matter.

On April 20, 2023, after Whirlpool had produced payroll and timekeeping data and other information regarding the work performed during the Impacted Pay Periods, the Parties participated in a full-day mediation with Dennis Clifford, a highly regarded labor law neutral with significant experience in labor and employment and wage-and-hour litigation. While the Parties did not reach an agreement on the day of mediation, with the continued assistance of Mr. Clifford, the Parties were able to reach a preliminary framework of a settlement in the following weeks. Since that time, after substantial further work between the Parties and their counsel and finalizing certain terms and entering into an initial Memorandum of Understanding, the Parties were able to reach a final Settlement Agreement.

---

[1] During the Impacted Pay Periods, of the employees affected, there were 106 Massachusetts employees and 9,461 Ohio employees affected by the Kronos outage.

### C.    THE SETTLEMENT AGREEMENT

The Settlement Agreement (Exhibit 1) has been filed as an attachment to this motion. The Settlement will provide a fair, reasonable, and adequate recovery to all non-exempt employees of Whirlpool who choose to opt-in to it. Any of these current or former employees, who are non-exempt individuals working across the U.S. and who were impacted by the Kronos Outage will be notified of, and eligible to join, the settlement. Under the settlement, Whirlpool will pay all collective members who were allegedly paid late a proportional amount of the delayed wages as liquidated damages. In addition, Whirlpool will pay a flat rate to non-exempt employees who worked in Ohio and Massachusetts, which are the two states in which Whirlpool employees worked that had higher wage payment penalties than states in which other Whirlpool employees worked. As part of the settlement, Whirlpool legally confirmed that it would forego recoupment of any alleged overpayments made to allegedly overpaid putative collective members, a significant value to these putative collective members.

The settlement does not create any complicated claims process. Once the settlement is approved, it will be administered by an independent settlement administrator, who will send the proposed notice and settlement checks to all putative collective members by U.S. mail. To opt-into the settlement, putative collective members need only cash their check.

### D.    ARGUMENT & AUTHORITIES

#### 1.    The Parties have agreed to the terms of the Settlement Agreement.

Sixth Circuit precedent allows, but does not mandate, judicial review of FLSA settlement agreements. *Mercer v. Knox Educ. Serv. Ctr.*, No. 2:21-CV-5092, 2022 WL 7482593, at *1 (S.D. Ohio Oct. 13, 2022); *see also Askew v. Inter-Cont'l Hotels Corp.*, 620 F.Supp.3d 635, 643 (W.D. Ky. 2022) ("[T]he Court concludes that FLSA is not an 'applicable federal statute'

under Rule 41(a)(1)(A) that prevents dismissal at the parties' behest."). "To approve a settlement, a court must conclude that it is fair, reasonable, and adequate and that the settlement resolves a bona fide dispute under the FLSA" *Id.* (internal quotation omitted). "The primary focus of the Court's inquiry in deciding whether to approve the settlement of a FLSA collective action is on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Hiser v. NZone Guidance, LLC*, No. 1:18-CV-1056-RP, 2021 WL 2934896, at *2 (W.D. Tex. Jan. 25, 2021) (quotation omitted).

The Parties have fully executed the proposed settlement agreement for review. The Court has the authority to approve the settlement or decline approval—or even to suggest additional or modified terms that would meet with the Court's approval—but cannot modify the agreement itself. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Cochran v. Zeon D.P., LLC*, 638 F. Supp. 2d 759, 761 (W.D. Ky. 2009) ("While the Court … has broad discretion to approve a settlement, it may not simply impose changes upon or modify the terms of the settlement. Thus, the Court may not fashion its own settlement by highlighting certain provisions as fair or reasonable and striking others it finds unreasonable." (internal citation omitted)); *Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 604 F. Supp. 68 (S.D. Ohio 1984) ("This Court does **not** have the power to order specific changes or modifications to be made in the agreement." (emphasis in original)); *accord Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he

Court is not authorized to insist upon changes that, in its judgment, might lead to a superior

settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc*

*denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property Damage Class*

*Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc.*

*v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014).

### 2.    The Settlement represents a reasonable compromise of this litigation.

There is a strong presumption in favor of finding a settlement fair, particularly where

it is the negotiated result of an adversarial proceeding. *Sims v. Hous. Auth. City of El Paso*,

No. EP-10-CV-109-PRM, 2012 WL 10862119, at *3 (W.D. Tex. Feb. 29, 2012). The key

question is "whether the interests of the class as a whole are better served if the litigation is

resolved by the settlement rather than pursued." *See Brotherton v. Cleveland*, 141 F. Supp. 2d

894, 903 (S.D. Ohio 2001). Although the class-action provisions of Federal Rule of Civil

Procedure 23 do not apply to FLSA collective actions, courts have looked to the six factors

used in class actions for evaluating FLSA settlement proposals: (1) the risk of fraud or

collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of

discovery completed; (4) the likelihood of success on the merits; (5) the opinions of collective

counsel and the claims representative; (6) the reaction of absent class members; and (7) the

public interest. *See O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP,

2020 WL 7634780 (W.D. Tenn. Dec. 22, 2020) (collecting cases).

### 2.1.    Factor 1: There was no fraud or collusion in reaching the settlement.

The Settlement was reached after the Parties and their counsel attended a full-day

mediation with Dennis Clifford on April 20, 2023. The Parties mutually selected Mr. Clifford

due to his knowledge and experience in employment matters, including cases arising under

the FLSA. Following the mediation, Counsel for the Parties negotiated for several more months on specific terms of the settlement before ultimately arriving at the Settlement Agreement attached here.

Thus, the settlement is a product of the extended negotiations between the Parties, including arms-length negotiation of counsel and mediation with Mr. Clifford. Simply put, there was no fraud or collusion by any participant. *See* Ex. 2, Parmet decl.

### 2.2.    Factors 2-4: If not resolved, further, extensive litigation would follow.

This case was settled during litigation between the Parties. "[T]hat this settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Domingue v. Sun Elec. & Instrumentation, Inc.*, No. CIV.A. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010). Indeed, it was resolved only after substantial investigation and work by the Parties and their counsel. The work undertaken by Plaintiff and Plaintiff's counsel included:

- Investigation of Whirlpool and its management and structure;

- Review of Department of Labor database and records;

- Review of court records for similar or related cases involving Whirlpool and its related corporate entities;

- Review of legal authority, including court orders and administrative guidance, regarding legal issues before and during the course of the lawsuit;

- Drafting, filing, and serving the Original Complaint;

- Conferring with Whirlpool regarding the initial plaintiff and substitution of the named plaintiff;

- Drafting and filing Plaintiff's Amended Complaint;

- Reviewing Plaintiffs' documents;

- Interviewing Plaintiffs;

- Reviewing Whirlpool's production, including payroll and time information and data;

- Analyzing payroll and time information and data for Plaintiff and the potential collective including creating a damage model for the data;

- Attending a full-day mediation;

- Negotiating and finalizing the Parties' initial Memorandum of Understanding for the settlement; and

- Negotiating and finalizing the Parties' final Settlement Agreement and approval documents.

If the case were not settled, there would be extensive work to come, including written discovery to and from all Parties and associated discovery disputes, certification of the FLSA collective, depositions of both sides, dispositive motions, and questions regarding applicability of the FLSA, Plaintiff's damages, Whirlpool's good faith and willfulness, and decertification.

Under the unique facts presented by this case, the compromised settlement represents a fair compromise of the claims. Whirlpool planned significant defenses to liquidated damages. Whirlpool intended to claim it was a victim of the cyberattack that shut down the Kronos system and that it acted in good faith after the outage began. Whirlpool also intended to contest conditional certification and argue that Plaintiff's claims were inappropriate for collective action treatment. The Parties could have litigated these issues for years, including through discovery, trial, and appeal, with no guarantee of success for Plaintiff and the proposed collective. The Settlement avoids this significant risk and provides substantial benefits to the collective members that opt-in—which include all eligible employees.

In all, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiff in particular) recognized that the settlement represented a compromise of the range and certainty of damages.

### 2.3.    Factor 5: Settlement is in the best interest of Plaintiff and the collective.

That this Settlement in the best interest of Plaintiff is an opinion shared by both

Plaintiff and Plaintiff's counsel. Ex. 2, Parmet decl. Plaintiff's counsel has served as lead or co-lead counsel in numerous wage-and-hour actions with multiple plaintiffs. For example, Plaintiff's counsel, Matthew S. Parmet, has successfully recovered unpaid overtime and associated damages on behalf of many workers, including many large-scale wage-and-hour class/collective actions. *See*, *e.g.*, Ex. 2, Select Wage-and-Hour Settlements. Whirlpool's counsel, has extensive experience in defending employers in all manner of employment law issues, including FLSA claims.

Because Plaintiff is represented by experienced counsel, the Court may rely upon their judgment as to the benefits of settlement in relation to the risks of litigation and trial. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Plaintiff's counsel's experience in, and knowledge of, wage-and-hour cases has been noted by various courts. *Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878, at *2 (S.D. Ind. May 3, 2023) (preliminarily approving a wage-and-hour class action settlement and recognizing both Morgan & Morgan and Parmet PC as "experienced counsel familiar with the applicable facts and law"), *final approval granted by* ECF No. 102 (Sept. 8, 2023); *Stevens v. PepsiCo Inc.*, No. 7:22-cv-00802-NSR, ECF No. 73, at *4, 6 (S.D.N.Y. Dec. 2, 2022) (acknowledging wage-and-hour plaintiffs' counsel, including Morgan & Morgan and Parmet PC, as "competent and experienced counsel" that achieved a "commendable result, given the complexities of this Litigation"); *Venable v. Am. Consulting and Testing Inc.*, No. 6:20-cv-01232, 2022 WL 595738, at *4 (W.D. La. Feb. 25, 2022) ("Plaintiffs' counsel is well known to the Court and has prosecuted many such [wage-and-hour] claims with similar professionalism and skill."), *adopted by* 2022 WL 741698 (W.D. La. Mar. 10, 2022); *Sandras v. Expeditors and Prod. Servs. Co.*, C.A. No. 16-0239, 2019 WL 658819, at *2 (W.D. La. Feb. 13, 2019) ("This case has been

litigated by competent lawyers on each side who enjoy great respect in their field from both sides of the aisle. Counsel for Plaintiff has appeared multiple times in this Court with success on most, if not all, occasions."), *adopted by* 2019 WL 1446481 (W.D. La. Mar. 29, 2019).

Plaintiff's counsel agrees the Settlement Agreement is a fair and reasonable compromise of a bona fide dispute regarding the claims alleged by Plaintiff in light of the procedural posture of the case, the litigation risks, and the litigation costs to Plaintiff. Ex. 2, Parmet decl., at § D. The Parties have engaged in arm's-length and extended settlement negotiations. Ex. 2, Parmet decl., at § D. Because the settlement is a fair and reasonable compromise given the considerations outlined above, the Court should approve the Settlement.

### 2.4.    Factor 6: In an FLSA settlement, there are no absent class members.

The settlement in this case resolves the claims at issue through only the FLSA's opt-in collective action mechanism, rather than Rule 23. Each putative collective member would receive a notice advising them of the settlement so they can decide for themselves whether to opt-in and accept the settlement payment offered by Whirlpool. Thus, there are no "absent" class members because all plaintiffs must affirmatively opt-into the case. *Lawson v. Procare CRS, Inc.*, No. 18-cv-00248-TCK-JFJ, 2019 WL 112781, at *3 (N.D. Okla. Jan. 4, 2019) ("Unlike settlements of class actions, cases involving infants or incompetent persons, or settlements of non-bona fide disputes, FLSA claims are opt-in, meaning that the named Plaintiffs are represented by counsel and are actively engaged with the litigation."). And because there is no preliminary approval stage, with notice to "absent" class members, there are not even any objections or exclusions the Court could consider, as in a proposed Rule 23 settlement. For this reason, Factor 6 is not triggered here.

**2.5.    Factor 7: The public interest is served by settlement.**

The public interest is generally served by settling disputed claims. *O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *14 (W.D. Tenn. Dec. 22, 2020). This is particularly true given the additional public interest in enforcing compliance with wage-and-hour laws. *See id.* Of course, every case carries inherent risk to litigants, and this case is no different. *See id.* And even where liability appears clear, settlement is still favored because it conserves the parties' and judicial resources. *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *14 (E.D. Ky. May 12, 2020). This factor also weighs in favor of settlement.

**3.    Notice should issue to the proposed collective.**

As part of the Settlement Agreement, the Parties consent for notice of this case and the Settlement to issue to the following collective, pursuant to the FLSA, 29 U.S.C. § 216(b):

> All non-exempt employees, regardless of exact job, position held, or title, employed by Whirlpool in the United States from December 5, 2021 – January 2, 2022, who were employed in a job position that used (or would have used but for the Kronos Outage), Kronos Private Cloud to track their hours worked.

The notice provides information in clear and concise terms on the lawsuit itself, the terms and conditions of the settlement, the relief the settlement will provide collective members that opt-in, and the procedure for opting-in to the settlement by submitting a consent to join form.

**4.    The Court should allow a service award for the Named Plaintiff.**

The terms of the Settlement allow the Named Plaintiff, Avery Ladd, to receive a reasonable service award, to be paid from the gross settlement amount for initiating the investigation and litigation of this matter, serving as a claims representative, responding to counsel's questions, providing documents, reviewing discovery responses and data,

participating in settlement discussions, reviewing the Settlement, and otherwise assisting counsel. The service award also provides consideration for a general release.

Courts routinely approve service awards to compensate representative plaintiffs for the services they provided and the risks they incurred during the course of the class or collective action litigation. *See*, *e.g.*, *Caligiuri v. Symantec Corp.,* 855 F.3d 860, 868 (8th Cir. 2017) (approving $10,000 service award to each named plaintiff); *Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (same); *McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 WL 12513703, at *1 (W.D. Mo. Aug. 4, 2015) (approving $5,000 service award to each named plaintiff); *Castillo v. Morales, Inc.*, No. 2:12-cv-00650, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (approving $8,000 service award to named plaintiff representative in wage-and-hour case). Service awards are intended to reflect the substantial work performed and risk undertaken by a lead plaintiff, and can often be substantial. *See, e.g., Sanders v. MPRI, Inc.,* No. 5:08-cv-00345-R, ECF No. 180 (W.D. Okla. Oct. 19, 2009) (approving service awards to helpful plaintiffs of up to $14,300); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (approving service award of $10,000 as being "well within the range of reasonable incentive awards"); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $50,000); *Glass v. UBS Financial Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *16 (N.D. Cal. 2007), *aff'd*, 331 Fed.Appx. 452 (9th Cir. 2009) (approving $25,000 service awards to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000

service award to lead plaintiff). "Given [Ladd's] active participation," a service award is reasonable. *Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023, at *3 (W.D. Tex. Dec. 22, 2020).

**5.    Plaintiff's attorneys' fees and litigation expenses are part of the settlement.**

A portion of the Settlement is allocated to the payment of Plaintiff's attorneys' fees and case expenses. It is entirely appropriate for the issue of attorneys' fees to be settled by the Parties themselves. *See*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.").

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

The Sixth Circuit "require[s] only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). When awarding attorneys' fees from a common fund, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results obtained." *Id.* The court may do so by utilizing the percentage of the fund method, as Plaintiff proposes here, which "more accurately reflects the results achieved." *Id.* Indeed, Sixth Circuit district courts have found the percentage of the fund approach is "the **most appropriate** method for determining reasonable attorneys' fees."

*Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014) (emphasis added); *see also Fitzgerald v. P.L. Mktg., Inc.,* No. 217CV02251SHMCGC, 2020 WL 3621250, at *10 (W.D. Tenn. July 2, 2020) ("The percentage of the fund has been the **preferred method** for common fund cases, where there is a single pool of money and each class member is entitled to a share (i.e., a 'common fund')." (emphasis added) (internal citations and quotation marks omitted)); *Daoust v. Maru Rest., LLC,* No. 17-CV-13879, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019) ("[T]he amount of fees requested is fair and reasonable using the percentage-of-recovery method, which is consistent with the trend in this Circuit." (internal quotation marks omitted)).

In reviewing the award, the Court may consider the following factors: (1) the value of the benefit rendered to the plaintiff class/collective (that is, the results achieved); (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996), *on reconsideration in part*, 927 F. Supp. 1036 (S.D. Ohio 1996), *aff'd sub nom. Arthur Ray Bowling v. Pfizer, Inc.*, 103 F.3d 128 (6th Cir. 1996), *and aff'd*, 102 F.3d 777 (6th Cir. 1996).

### 5.1.    The requested fees are squarely within a reasonable percentage range.

Ladd requests the Court approve the attorneys' fees agreed upon under the settlement agreement as a percentage of the fund, which amounts to approximately 13.49% of the gross

monetary benefit obtained for the putative collective.[2]

The common fund consists of the total potential benefit for the collective of $4,199,725.00 (composed of $1,550,000 in new funds and Whirlpool being legally bound to its prior decision that it would not seek recoupment of $2,649,725 in alleged overpayments to putative collective members). *E.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2012); *In re: Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391, at *13 (S.D. Fla. Aug. 5, 2013).

Although Whirlpool contends it decided to forgive these overpayments, that forgiveness was a promise—not part of any formal legal arrangement.  Thus, while Plaintiff's counsel's fees are comprised of 40% of the new settlement funds obtained for the collective, the fees amount to only 13.49% of the overall gross settlement amount achieved for the collective, which is the proper measure for examining the benefit to the class or collective. *In re Flint Water Cases*, 583 F.Supp.3d 911, 947 (E.D. Mich. 2022) ("The Sixth Circuit instructs that the value of the benefit to the class is based 'on the total relief class counsel makes available to all the class members.'" (quoting *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016) (emphasis removed)), *dismissed*, No. 22-1187, 2022 WL 18960956 (6th Cir. Sept. 14, 2022).

### 5.2.    Factor 1: Value of the benefit provided.

When evaluating a claim for fees, the "most critical" factor is a party's success in the litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). In this respect, the settlement represents a significant success for Plaintiff and the putative collective.

---

[2] The attorneys' fees equate to 40% of the new monetary fund established under the settlement.

One court, undertaking an analysis of reasonableness of requested attorneys' fees in a class action, considered the comparative data regarding Rule 23 class settlements summarized by the National Economic Research Associates (NERA). *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp.2d 942 (E.D. Tex. 2000). The NERA Study relied upon by *Shaw* showed the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, this settlement is much higher.

Under the settlement, putative collective members who choose to join the settlement, if allegedly not timely paid will receive direct cash payments representing a substantial recovery on their alleged damages, and if allegedly overpaid will still receive a small cash payment and, in addition, will benefit from Whirlpool legally binding itself to its prior decision to forego any alleged right to seek recoupment of any alleged overpayments that Whirlpool may have had the right to recoup. Considering the risks of continued litigation, the settlement provides putative collective members with about 77% their total damages (not including the additional payments to class members depending which state they worked in), as well as the legally binding forgiveness of 100% of overpayments across the entire payroll outage period.[3]

Under Plaintiff's theory of the case, Plaintiff has prevailed in securing valuable compensation for their claims. He acquired a settlement that provides recovery for himself and putative collective member. Meanwhile, under Whirlpool's theory, the putative collective members would be owed nothing. In all, Plaintiff's counsel secured a valuable settlement that provides recovery for Plaintiff and putative collective member.

---

[3] The alleged late payments total $2,304,757.

### 5.3.    Factor 2: Value of services on an hourly basis.

Plaintiff's attorneys' fees are well within precedent in the Sixth Circuit, and, in fact, are on the low end of that range. In common fund cases such as this, including FLSA cases, district courts have approved fees ranging up to 40% of the collective's gross recovery. *Love v. Gannett Co. Inc.*, No. 3:19-CV-296-BJB-RSE, 2021 WL 4352800, at *7 (W.D. Ky. Sept. 24, 2021) (awarding 40%); *Helms v. Morton Buildings, Inc.*, No. 3:18-CV-01281, 2020 WL 13468848, at *2 (M.D. Tenn. Apr. 15, 2020) (same); *Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245-TRM-SKL, 2018 WL 1477127, at *1, 7-9 (E.D. Tenn. Mar. 8, 2018) (same); *Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855, at *2 (S.D. Ohio Nov. 8, 2018) (same); *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) (awarding 1/3); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *4-5 (N.D. Ohio Mar. 26, 2019) (same);

Courts have also approved of similar percentage-of-the-fund approaches when examining the same general fee structure proposed by Plaintiff here, where fees are determined as a percentage of the new money not inclusive of the forgiveness to class and collective members. *Marshall v. Coca-Cola Consolidated Inc.*, No. 3:22-cv-00214-RJC-SCR, ECF No. 27 (W.D.N.C. Oct. 18, 2023) (awarding 40% of new cash to class and collective, which was 18.69% of common fund); *Estevez v. Change Healthcare, Inc.*, No. 3:22-cv-00327, ECF No. 35 (M.D. Tenn. Jun 13, 2023) (awarding 40% of new cash to collective, which was 35.5% of common fund); *Woodruff v. Kaiser Aluminum Corp.*, No. 3:22-cv-00333, ECF No. 31 (M.D. Tenn. May 4, 2023) (awarding 40% of new cash to collective, which was 19.66% of common fund); *Osman v. Grube*, No. 3:16-cv-00802-JJH, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award and has been

approved in similar FLSA collective actions in this judicial district." (internal quotation omitted)). "The … percentage requested here is reasonable and appropriate in light of prevailing market rates and well below the 1/3 contingent fee percentage common in contingent fee plaintiffs' litigation." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) (approving 23%).

A contingency award **may** be examined by performing a lodestar cross-check of the fee award. *Barnes*, 2019 WL 1614822, at *6. However, the cross-check is "not required." *Id.*; *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *7 (S.D. Ohio Sep. 9, 2016) ("Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional."); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *6 (S.D. Ohio Oct. 3, 2018) (specifying a lodestar cross-check of percentage of the fund fee award is "unnecessary"). The relatively early settlement of this matter should not be held against Plaintiff's counsel. Plaintiff's counsel efficiently resolved this case by working with Plaintiff, defense counsel, and the mediator. They worked to exchange complex damage models and legal authorities, rather than prolong litigation to artificially increase potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (4th) § 14.121. The Parties also spent significant time negotiating terms of the settlement, negotiating and exchanging numerous drafts and revisions.

Plaintiff's total lodestar fees are within a reasonable multiplier of the total fees sought. Ex. 2, Parmet decl., at ¶¶ 41-43. The State Bar of Michigan's Economics of Law Survey,

"which includes reported billing rates throughout Michigan … is an acceptable source" for determining a reasonable hourly rate for attorneys' fees in an FLSA case. *Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212, 222 (W.D. Mich. 2018) (Green, Mag. J.); *Toliver v. JBS Plainwell, Inc.*, No. 1:11-CV-302, 2016 WL 165031, at *8 (W.D. Mich. Jan. 14, 2016) (Maloney, J.) (same). The Survey divides rates into quartiles, and *Martinez* recognized that, a 75th percentile was the appropriate assignment for an attorney with significant experience in a particular area. *See Martinez*, 325 F.R.D. at 222.

The 2023 Survey sets several relevant benchmarks for an hourly rate in this matter:[4]

| Category | Attorney | Mean | 75th % | 95th % |
|---|---|---|---|---|
| Practice Classification – Equity Partner/Shareholder | Matthew Parmet | $413 | $500 | $730 |
| Practice Classification – Non-Equity Partner | Michael Hanna | $425 | $525 | $700 |
| Years in Practice – 11 to 15 years | Matthew Parmet Michael Hanna | $330 | $395 | $575 |
| Grand Rapids Area | --- | $368 | $450 | $625 |
| Field of Practice – Employment law (plaintiff) | --- | $412 | $475 | $650 |
|  |  |  |  |  |
| Average | Matthew Parmet | $380.75 | $455.00 | $645.00 |
| Average | Michael Hanna | $383.75 | $461.25 | $637.50 |
| **Overall** |  | **$382.25** | **$458.13** | **$641.25** |

Plaintiff's counsel estimates that, to date, a total of at least 260 hours have been devoted by the attorneys working on this case.[5] Ex. 2, Parmet decl. Using the 75% percentile average of $458.13.13 for all attorneys equates to a total current lodestar of $119,112.50 based

---

[4]    STATE BAR OF MICHIGAN, 2023 Economics of Law Survey Results, https://www.michbar.org/file/pmrc/pdfs/2_2023EOL_SurveyResults.pdf (2023).

[5] Plaintiff has only estimated the hourly rates for the attorneys appearing on his behalf in this matter, rather than for all attorneys working on this matter. Several of the attorneys working on this matter would have equal or higher hourly rates than either Mr. Parmet or Mr. Hanna due to increased years of experience and their positions.

on Plaintiff's counsel's estimates. Using the 95% percentile average of $641.25 for all attorneys—which Plaintiff's counsel believes is more appropriate given Plaintiff's counsel's experience and dedicated focus to wage-and-hour litigation—equates to a total current lodestar of $166,725 based on Plaintiff's counsel's estimates.

Critically, even after approval, Plaintiff's counsel's time in this matter will continue to increase. Plaintiff's counsel will spend time fulfilling Plaintiff's obligations under the settlement agreement, administering the settlement, and responding to Plaintiff's and putative collective members' inquiries. These efforts may easily match or surpass the time Plaintiff's counsel has already devoted to this matter. Using the same mid-range hourly rate, at a reasonable estimate total hours of a minimum of 320 hours after administration, Plaintiff's counsel's lodestar would be at $146,600.00 at 75% and $205,200.00 at 95%. *E.g.*, *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *14 (E.D.N.Y. Apr. 11, 2016) ("In determining a reasonable attorneys' fee award, courts are mindful of the fact that the lodestar multiplier will diminish when counsel is required to perform additional work in administering a finalized settlement.") (collecting cases). In all, Plaintiff's counsel's current lodestar has a 5.96 to 4.26 multiplier, which is already within the range of reasonableness and will decrease as this case moves to completion (to 4.84 or as low as 3.46 based on Plaintiff's counsel's estimates above). *In re Rite Aid Corp. Secs. Litig.*, 362 F.Supp.2d 587, 589 (E.D. Pa. 2005) (6.96 multiplier); *In re RJR Nabisco*, 1992 WL 210138, at *5-6 (S.D.N.Y. Aug. 24, 1992) (6 multiplier); *Cosgrove v. Sullivan*, 759 F.Supp. 166, 167 n.1 (S.D.N.Y. 1991) (8.74 multiplier); *Boston & Maine Corn. v. Sheehan. Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (6 multiplier); *Roberts v. Texaco*, Inc., 979 F.Supp. 185, 200 (S.D.N.Y. 1997) (5.5 multiplier); *In re Charter Communications, Inc., Sec. Litig.*, No. MDL 1506, 4:02–CV–1186 CAS, 2005 WL

4045741, at *18 (E.D. Mo. June 30, 2005) (5.61 multiplier); *In re Aremissoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134-35 (D.N.J. 2002) (4.3 multiplier ); *In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J. 1999) (5.28 multiplier ), *vacated and remanded*, 243 F.3d 722 (3d Cir.2001), *on remand*, No. 98–2819 (D.N.J. June 11, 2002); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ.A.H–99–4137, Civ.A.H–99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Merkner v. AK Steel*, No. 1:09–CV–423–TSB, 2011 WL 13202629, at *5 (S.D. Ohio Jan. 10, 2011) (5.3 multiplier).

### 5.4.    Factor 3: Contingent nature of fees.

Plaintiff's counsel undertook this representation on a purely contingent basis. Plaintiff's counsel thus took on the risk that accompanies contingent-fee representation that the investment of substantial attorney time and resources would be lost, including the prospect of dispositive motions or unfavorable outcomes late in discovery, or even at trial or on appeal. Plaintiff's counsel should be compensated for this risk. *See, e.g.*, *Crosby v. Bowarter Inc. Ret. Plan*, 262 F.Supp.2d 804, 814 (W.D. Mich. 2003) (Enslen, J.) (explaining a contingency justifies a higher fee), *vacated on different grounds sub nom. Crosby v. Bowater Inc. Ret. Plan for Salaried Emps. of Great N. Paper, Inc.*, No. 03-1808, 2004 WL 5389834 (6th Cir. Dec. 29, 2004). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011). Had this case not settled, Plaintiff's counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Whirlpool could have succeeded. Therefore, Plaintiff's counsel was at great risk for non-payment for all work performed.

Moreover, Plaintiff's agreement with counsel allowed Plaintiff's counsel to seek a 40% contingency in the amount of all monetary value obtained by way of the claims. Ex. 2, Parmet decl. "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (citations omitted); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *5 n.1 (N.D. Ohio Mar. 26, 2019) (same). Yet Plaintiff's counsel's request for fees voluntarily limits that request to the new settlement fund, reducing the fees they would be entitled to seek to only new money obtained and not the monetary value released by Whirlpool. That voluntary reduction from what counsel would be entitled to is evidence of the reasonableness of the fee. *See, e.g.*, *Coach, Inc. v. Goodfellow*, No. 2:10-cv-02410-V, 2012 WL 12868277, at *3 (W.D. Tenn. May 22, 2012) ("[T]he fee seems reasonable considering that Coach states that the fees requested in this motion are less than the amount that their counsel would receive under the parties' contingency agreement."). This factor thus favors approval of the requested fees.

### 5.5.    Factor 4: Society's interest in compensating successful attorneys.

There is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994). Plaintiff's counsel took on this matter to represent Ladd and similarly situated workers in their wage claims against Whirlpool. This factor supports awarding the requested fees to encourage qualified attorneys to represent employees in claims for unpaid wages.

### 5.6.    Factor 5: Complexity of the litigation

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D.

Ohio July 11, 2014) (internal citation omitted). Had the case not settled, the parties faced complex motion practice, both over the merits, as well as on procedural matters, such as collective treatment.

### 6.    Plaintiff's counsel is entitled to recover reasonable costs and expenses.

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003). Plaintiff's counsel seeks reimbursement of the following litigation expenses, which were reasonable and necessary for prosecuting this case:

| Cost | Amount |
|---|---|
| Court Fees | $ 402.00 |
| Service | $ 110.00 |
| Copies | $ - |
| Postage | $ 1.23 |
| Admissions | $ 240.00 |
| Travel and Incidental | $ 5,357.96 |
| Legal Research | $ 284.63 |
| Certificates of Good Standing | $ 20.00 |
| | |
| **TOTAL** | **$ 6,415.82** |

### E.    CONCLUSION

For these reasons, the Court should approve the Settlement Agreement.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
TX Bar # 24069719
**Parmet PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5228
matt@parmet.law

**Michael N. Hanna**
MI Bar # P81462
**Morgan & Morgan, P.A.**
2000 Town Center, Suite 1900
Southfield, MI 48075
(313) 251-1399
mhanna@forthepeople.com

**Attorneys for Plaintiff**