UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AVERY LADD, individually and on behalf of
all others similarly situated,

    Plaintiff,

v.

WHIRLPOOL CORPORATION,

    Defendant.

                                       /

CASE No. 1:22-cv-330

HON. ROBERT J. JONKER

## **ORDER**

      The Court is reviewing Plaintiff's unopposed Motion to Approve an FLSA Settlement Agreement. (ECF No. 50). The Court appreciates the work the parties have done to negotiate and document a proposed settlement. Because the proposed settlement is under the FLSA and involves proposed Court-authorized notice, the Court believes that its approval is necessary and appropriate. Based on its preliminary review of the papers, the Court has identified several items on which it believes additional information is necessary to facilitate its evaluation.

      First, some of the numbers in the Settlement Agreement itself appear to be inconsistent with numbers used in Plaintiff's brief supporting approval of the Agreement. In particular, the Settlement Agreement defines the "Gross Settlement Amount" as $1,775,000, (ECF No. 50 at PageID.199, 203), but Plaintiff's brief references only $1,550,000 in anticipated "new funds" from Whirlpool, (ECF No. 51 at PageID.260). Another apparent inconsistency is in the estimated overpayment amount that Whirlpool is committing not to recoup.  The Settlement Agreement pegs this number at $3,485,371.28, (ECF No. 50 at PageID.203), but Plaintiff's brief says the number

is only $2,649,725 (ECF No. 51, at PageID.260). The Court needs an explanation for the apparent inconsistencies.

Second, the apparent inconsistencies complicate the Court's ability to assess the proposed award of attorney fees.  As far as the Court can tell, there is no specific dollar amount specified for the proposed attorney fees in either the Settlement Agreement or Plaintiff's brief. Both documents speak of the proposed fee only in terms of a percentage of either "new settlement funds" (about 40%) or the "overall gross settlement" (about 13.49%); or of a multiple of lodestar (5.96 to 4.26 times an unspecified lodestar). These are not particularly helpful unless the Court knows the actual base numbers on which the percentage is calculated, or to which the multiplier applies. One easy way to do that would be to specify the precise dollar amount of fees Plaintiff's counsel is seeking, but the Court does not see that anywhere in the papers.

Third, as the Court reads the Settlement Agreement, any amount of the requested attorney fee the Court decides not to approve flows directly into the settlement pot that is ultimately available on a *pro rata* basis to collective claimants in the Reconciled Employees group—the group of initially underpaid employees. On its face, that would seem to put the potential collective and Plaintiff's counsel in a potential conflict.  At a minimum, it suggests to the Court the need for especially careful scrutiny of the attorney fee request portion of the proposed Settlement, particularly because no one will know for sure how much monetary value flows to the proposed collective until after notice and checks are issued and those who choose to opt in actually cash or deposit the checks.  It also suggests the need for some kind of disclosure of the attorney fee in the court authorized notice, which the Court did not see on initial review.  The Court invites Plaintiff's counsel to submit additional briefing on these issues if desired.

Fourth, the Court's concern about trying to evaluate the reasonableness of a proposed fee in this case is further elevated by the "No Recoupment" feature of the settlement. This is by far the single largest dollar amount segment of the proposed settlement (whether the actual amount is $3.4 million or $2.6 million) and yet, practically speaking, it appears to have been a value largely in place based on Whirlpool's own pre-litigation decision. Using that amount as a substantial factor in justifying an attorney fee award is potentially problematic, in the Court's view. This is especially so because it is hard to see how anyone in the "Overpaid Employees" group has a plausible FLSA claim at all, and correspondingly, why that group should have any claim to any of the new settlement funds to be provided by Whirlpool. But at $30 per overpaid employee, potentially $285,600 in settlement money will go to this group if all 9,520 cash their checks. That is 16-18% of the settlement fund (depending on whether the amount is $1.775 million, or $1.550 million). Again, the Court invites Plaintiff's counsel to submit additional briefing on the issue if desired.

The Court can see the parties have worked hard and in good faith to come to terms in this matter. And based on its preliminary review, the Court finds good reason to expect that it will ultimately be able to approve the basic structure and terms of the settlement. The Court's primary concerns after initial review are the ones identified in this Order. The Court will make its final decision after reviewing any additional submissions filed not later than **December 15, 2023**.

**IT IS SO ORDERED.**


Dated:   November 22, 2023    
ROBERT J. JONKER  
UNITED STATES DISTRICT JUDGE